[Cite as *State v. Walker*, 2016-Ohio-3499.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,

    v.

DEVIN J. WALKER,

      DEFENDANT-APPELLANT.

CASE NO. 13-15-42

O P I N I O N

Appeal from Seneca County Common Pleas Court
Trial Court No. 15-CR-0191

Judgment Affirmed in Part, Reversed in Part and Cause Remanded in Part

Date of Decision: June 20, 2016

APPEARANCES:

    *Kenneth J. Rexford* **for Appellant**

    *Angela M. Boes* **for Appellee**

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Devin Walker ("Walker") brings this appeal from the judgment of the Court of Common Pleas of Seneca County entering a judgment of guilt on drug offenses and sentencing him to prison. Walker challenges 1) the denial of his motion for acquittal and 2) the effectiveness of his counsel. For the reasons set forth below, the judgment is affirmed in part and reversed in part.

*Procedural History*

{¶2} On September 16, 2015, the Seneca County Grand Jury indicted Walker on three counts: 1) Trafficking in Heroin in violation of R.C. 2925.03(A)(2)/(C)(6)(e), a felony of the first degree; 2) Aggravated Trafficking in Drugs in violation of R.C. 2925.03(A)(2)/(C)(1)(a), a felony of the second degree; and 3) Aggravated Trafficking in Drugs in violation of R.C. 2925.03(A)(2)/(C)(1)(c), a felony of the second degree. Doc. 1. All three of the counts contained a specification that they occurred in the vicinity of a juvenile and that there was property subject to forfeiture. *Id.* A jury trial was held from November 17, 2015, until November 19, 2015. Doc. 45. At the conclusion of the trial, the jury entered verdicts of guilty to each of the charges and the specifications. *Id.*

{¶3} On November 23, 2015, a sentencing hearing was held. Doc. 49. The trial court determined at that time that the second and third counts of the

indictment were allied offenses of similar import and merged for the purpose of sentencing. *Id.* Neither party objected to this finding, and the State elected to proceed to sentencing on Count Two. *Id.* The trial court then sentenced Walker to an aggregate prison term of fifteen years. *Id.* Walker then filed a timely notice of appeal. Doc. 56. On appeal, Walker raises the following assignments of error.

## First Assignment of Error

**The trial court erred in denying the defense motion for acquittal as to the element of the claim of a juvenile being in the vicinity.**

## Second Assignment of Error

**[Walker] was denied the effective assistance of counsel when defense counsel failed to effectively counter the State's DNA evidence.**

## Third Assignment of Error

**[Walker] was denied the effective assistance of counsel when defense counsel in no way sought suppression of the fruits of a warrantless arrest of [Walker].**

## Fourth Assignment of Error

**[Walker] was denied the effective assistance of counsel when defense counsel introduced hearsay evidence as to what Richard Wade had said without the ability to confront Mr. Wade.**

*Trial Testimony*

{¶4} At trial, the State presented the testimony of seven witnesses. The first was Officer Brandon Bell ("Bell") of the Fostoria Police Department. Bell testified that on July 30, 2015, he was notified by dispatch that a woman at a

residence called and said there were some people involved in illegal activity at her residence and she wanted them removed. Tr. 106. When Bell arrived at the residence, he met Crystal Dayton ("Dayton") who told him there were two men living in the residence with her and that they were selling narcotics from the residence. Tr. 106-107. Dayton then escorted Bell into the home and showed him a scale in the kitchen cupboard. Tr. 107. In the living room area, Dayton picked up a pair of khaki cargo pants and pulled 2 to 3 bags of pills from the pockets. Tr. 107. Underneath the pants were two cell phones. Tr. 108. Bell instructed Dayton to put the drugs back in the pockets and to put the pants back on the floor where she found them. Tr. 109. Bell then contacted the drug task force to get a warrant. Tr. 112. According to Bell, Dayton indicated that the pants belonged to a person known to her as "Moes". Tr. 112. Later the man identified as "Moes" arrived at the residence with a female, who was later determined to be 17 years old. Tr. 113-115. The police detained both within 20 feet of the drugs, though the drugs were behind a closed door. Tr. 115.

{¶5} On cross-examination Bell testified that although he had gone to the apartment to remove people Dayton wanted to leave her residence, when he arrived, there was no one in the apartment. Tr. 122. Bell stayed to investigate after Dayton told him about the drugs. Tr. 122. Bell also testified that there were other items of clothing near the pants, but he did not know who owned them. Tr. 125. Bell also admitted that both he and Dayton had handled the bags of drugs

without gloves. Tr. 128-29. At no time did Dayton tell Bell that she had seen Walker with the drugs. Tr. 139.

{¶6} Dayton testified second for the State. She testified that she had first met Walker, whom she knew as "Moes", approximately two weeks before July 30, 2015. Tr. 142. During July of 2015, she was living in the residence with her boyfriend, Charles Puryear ("Puryear"). Tr. 142. When she called the police, it was to remove Puryear and Richard Wade ("Wade") from the home because they were dealing drugs. Tr. 143. Dayton testified that she took Bell into the home, showed him the scale, and then picked up the pants and began pulling drugs out of the pocket. Tr. 144-45. Dayton was unable to initially recall who owned the pants at trial, but after refreshing her memory with her prior statement was able to do so. Tr. 145-46. According to Dayton, Walker was wearing the pants the last time she saw him. Tr. 147. Dayton also testified that she had seen the girl with Walker the first time he came to the residence. Tr. 148.

{¶7} On cross-examination Dayton testified that she called the police after she asked Puryear and Wade to leave the residence, but they had refused. Tr. 151. She also admitted that she had met someone she knew as "Wood" who was related to Wade and Puryear and that he had been at the residence a week before the police were called. Tr. 153. Dayton testified that she called the police because she knew that they were selling drugs and she was a "recovering addict". Tr. 154. However, she admitted that when she called the police, she did not tell them about

the drug activity. Tr. 158. Before she called the police on July 30, 2015, she had called Puryear, whom she believed was at the apartment, and asked him to leave. Tr. 160. When he refused, she told him she was calling the police. Tr. 160. Neither Puryear nor Wade were present when she arrived at the apartment. Tr. 160. Dayton indicated that although she believed that Walker had spent the night of the 28th at the residence, she did not know when he left or what he was wearing. Tr. 162. Dayton also testified that she had never seen Walker with drugs and did not know why she told Bell that Walker was selling drugs. Tr. 166, 174. The only people she saw with drugs was Puryear, Wade, and "Wood". Tr. 174. Dayton admitted that when she called the police, she was under the influence of heroin and was using it daily at that time. Tr. 167-68. Dayton testified that she believed Walker would be coming to the apartment to get drugs because while she was speaking with Wade and texting Wade about the police being there, he indicated that he would send Walker to the residence to pick up the drugs. Tr. 176. These communications were in the context of an argument she was having with Wade about him not returning to the residence and not continuing to help pay the rent on the residence. Tr. 176-177.

{¶8} Detective Sergeant Donald Joseph of the Seneca County Sheriff's Department testified that he took the drugs to the Bureau of Criminal Investigation ("BCI") for identification. Tr. 189. Megan Koentop ("Koentop") testified that she was a forensic scientist in the drug chemistry section of BCI. Tr. 192. She

identified the items brought to her for investigation as follows: Item 1 was 19.74 grams of heroin; Item 2 was 42 pills of oxycodone; Item 3 was six tablets of oxycodone; Item 4 was 1.13 grams of heroin; Item 5 was 9 tablets and various tablet pieces of oxycodone; and Item 6 was 35 tablets of oxycodone. Tr. 202-203. Koentop testified that for Item 2, the bulk amount would be 15 pills, but there were 42 in the bag. Tr. 204. For Item 6, the bulk amount would be 30 tablets and the bag contained 35. Tr. 205.

{¶9} Detective Gabriel Wedge ("Wedge") testified that he was employed by the Fostoria Police Department, but was assigned to the Seneca County Drug Task Force. Tr. 210. On July 30, 2015, Bell contacted him about suspected drug trafficking. Tr. 212. Based upon what Bell told him, he obtained a search warrant and executed it at the residence. Tr. 213. Wedge identified photographs of the scene as well as items found during the search. Tr. 214-15. Wedge testified that finding scales, baggies, a broken plastic spoon, and multiple cell phones were indications of drug trafficking. Tr. 219-20. Wedge indicated that the approximate street value of the drugs found in the residence would be $5,500. Tr. 222. The amount of the drugs found would not typically be seen in a personal use case. Tr. 219.

{¶10} Wedge later got another search warrant to search the phones found at the scene, as well as a phone taken from Walker when he was arrested. Tr. 233. The records from the LG phone found at the scene disclosed Facebook chats

between "D.Moes East" and several other people. Tr. 236. These messages used terms such as "beans" which is slang for prescription pills, "perks" indicating Percocet, "beanie babies" indicating a bag of pills, and saying he was "back on deck" meaning he had items to sell. Tr. 238-241. The phone also contained a video showing a large amount of money and a hand spreading the money out. Tr. 243. A second video found on the phone showed Walker driving a car. Tr. 295.

{¶11} When Walker arrived at the scene, he had a large amount of cash in his wallet, a Lucas County Adult Probation Department Card in the name of "Devin Mosley", which was another name used by Walker, and a paystub showing that he had year to date earnings from a construction company for $1,974. Tr. 216-17. Walker was accompanied by a 16 year old girl when he came to the residence. Tr. 215. Walker was immediately arrested upon opening the door and at that time, the juvenile with him was within 30 feet of the drugs in the residence. Tr. 244.

{¶12} On cross-examination, Wedge testified that prior to that day, the drug task force had heard of Wade, but had no knowledge of Walker. Tr. 246. Wedge admitted that although he had overheard Dayton arguing with Wade about the money used to pay the rent, he had no knowledge of any text messages. Tr. 251-52. During the conversation he overheard, there was no mention of drugs at all. Tr. 252. Wedge also had no information to indicate that Dayton had been in contact with Walker. Tr. 251. Before executing the search warrant, the officers

waited approximately an hour to see if anyone would come to get the drugs. Tr. 253. Just before they began packing everything up, Walker arrived at the residence. Tr. 253. Wedge also admitted that although Walker's pay stub showed a limited year to date income, Walker was working through the union so could have worked for multiple contractors. Tr. 262. Wedge also admitted that although he knew Puryear and Wade were trafficking drugs from the apartment and that Bell and Dayton had touched both the pants and the bags of drugs without gloves, the only DNA sample submitted was Walker's. Tr. 285-87. Wedge testified that some of the incriminating messages with the slang for drugs were from 2014. Tr. 267. Finally, Wedge testified that he had no knowledge of when the videos on the phone were filmed or by whom. Tr. 296.

{¶13} Detective Charles Boyer of the Tiffin Police Department testified that he transported DNA samples to the crime lab in Mansfield Ohio for DNA processing. Tr. 207-209. Dawn Fryback ("Fryback") was a DNA forensic scientist with the Mansfield Police Forensic Lab. She testified via video deposition and identified Exhibit 1 as her report. The report indicated that Walker could not be excluded from the DNA mixture on the pants. Ex. 1. The probability of a randomly selected individual being included for statistical calculation was 1 in 592,400. *Id*. However he was excluded as the major donor as that came from a female profile not identified. *Id*. Walker also could not be excluded from the DNA mixture taken from the plastic bags, though that mixture contained the

presence of at least three individuals. *Id*. The Exhibit showed that probability of a randomly selected individual being included for statistical calculation was 1 in 1,984. *Id*. The only DNA profile submitted for comparison belonged to Walker. *Id*.

{¶14} After Fryback's deposition was played, the State rested its case and the exhibits were admitted without objection. Tr. 303-306. Walker then made a motion for acquittal, which was denied. Tr. 307-310. Walker then presented the testimony of two witnesses. The first witness was Emily Rodriguez ("Rodriguez"), who was the female with Walker when he was arrested. Tr. 316. Rodriguez testified that she was a friend of Walker and that she had ridden with Walker and Wood the week before and dropped Wood off at the apartment. Tr. 314. At that time, Wood borrowed some clothes from Walker that were in the car, including the cargo pants. Tr. 314. Rodriguez testified that she had never been in the residence prior to the day of the arrest and that she had never seen Walker with drugs. Tr. 319. According to Rodriguez, Walker was working through the union in Lucas County as a commercial roofer. Tr. 315. On the day of the arrest, they were going to Fostoria to visit Walker's niece and then go shopping. Tr. 313. They stopped at the residence to pick up some belongings of Wood at the request of his family as he had died. Tr. 313. Walker got the keys to the residence from the family and that was the first stop they made after arriving in Fostoria. Tr. 317.

{¶15} On cross-examination Rodriguez testified that she was 17 years of age at the time of the trial. Tr. 321. She admitted that she and Walker had just recently started dating. Tr. 322. She indicated that on the night of the 28th when Dayton said he was in Fostoria, Walker was with her in Toledo. Tr. 316. She was with Walker when he spoke to Wood's family, but Walker went to get the keys without her. Tr. 327-28. She also admitted that she did not know why Wood would go to Fostoria, and then suddenly decide to stay without any clothes necessitating his borrowing clothes from Walker. Tr. 326.

{¶16} The final witness was Dannell Williams ("Williams") who was Rodriguez's mother. Tr. 331. She testified that Rodriguez and Walker started spending time together in June of 2015. Tr. 332. She never saw any indication that Walker was involved in any drug activity. Tr. 332. On July 28th, 2015, Walker was at her house. Tr. 332. On July 30, 2015, Rodriguez told her that she and Walker were going to Fostoria and then shopping. Tr. 333. She did not know that Rodriguez had previously been to Fostoria with Walker. Tr. 334. On cross-examination, she admitted that she was unaware of Walker's Facebook messages referencing drugs. Tr. 337. Following this testimony, Walker renewed his motion for acquittal, and it was again denied. Tr. 340-341.

*Sufficiency of the Evidence*

{¶17} Walker's first assignment of error alleges that the evidence was insufficient to prove the specification that Walker trafficked in drugs in the

presence of a juvenile. When reviewing a question of sufficiency of the evidence, an appellate court determines whether, after viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could find the essential elements of the crime charged proven beyond a reasonable doubt. *State v. Blanton*, 3d Dist. Marion No. 9-15-07, 2015-Ohio-4620, 48 N.E.3d 1018.

{¶18} Walker was charged with three counts of trafficking in various drugs, all a violation of R.C. 2925.03(A)(2).

> **(A) No person shall knowingly do any of the following:**
>
> **\* \* \***
>
> **(2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance \* \* \* when the offender knows or has reasonable cause to believe that the controlled substance \* \* \* is intended for sale or resale by the offender or another person.**

R.C. 2925.03(A)(2). A review of the evidence shows that the State presented evidence that drugs were found in the pockets of pants owned by Walker. The plastic bags containing the drugs and in the pockets contained a mixture of DNA on it from which Walker could not be excluded. There were also two cell phones found that were connected to Walker and a large sum of money found in the pants and on Walker's person. One of these phones showed messages related to Walker's Facebook account indicating drug transactions. The phone also contained videos of an unidentified hand spreading a large amount of money out and a video of Walker driving a car. There was also testimony that Wade, one of

the people alleged to be trafficking drugs, had indicated that Walker would be coming to pick up the drugs. Wedge testified that the amount of drugs found in the pants was a bulk amount seen for sales. Additionally, the large amount of cash, the multiple cell phones, and the content of the messages were typical of one trafficking drugs. Given all of the testimony and exhibits, the evidence was sufficient to show that Walker had been in contact with the drugs found in the pants, that it was an amount that would be more than for personal use. From the evidence, a reasonable juror could infer that at some point in time, Walker had either prepared for shipment, assisted in the transport, delivered, or prepared for distribution the drugs in the pants and that he had knowledge that they were to be sold. Thus, the evidence is sufficient to support the convictions for trafficking.

{¶19} In addition to the trafficking conviction, Walker was also convicted of specifications for trafficking in drugs in the vicinity of a juvenile. "An offense is 'committed in the vicinity of a juvenile' if the offender commits the offense within one hundred feet of a juvenile or within the view of a juvenile, regardless of whether the offender knows the age of the juvenile, whether the offender knows the offense is being committed within one hundred feet of or with view of the juvenile, or whether the juvenile actually views the commission of the offense." R.C. 2925.01(BB). There is no dispute that at the time of arrest, Rodriguez was under the age of 18, thus making her a juvenile. There is also no dispute that at the time of arrest, Rodriguez was within 100 feet of the drugs. However, this

alone is not sufficient to show that Walker committed the offense of trafficking in drugs in the vicinity of a juvenile. Viewing the evidence in a light most favorable to the State, the best that can be said is that Walker had arrived at the residence with the intent of transporting the drugs. If this had occurred, he would have committed the act of trafficking in drugs in the vicinity of a juvenile. This is not what happened. Instead, he was immediately arrested upon opening the door. No drugs were found on him when he was searched. The drugs in question were under the control of the police at all times when the juvenile was within 100 feet of the drugs. There was no evidence presented that Rodriguez, or any other juvenile was in the vicinity at the time Walker prepared for shipment, shipped, transported, delivered, prepared for distribution, or distributed the drugs. Dayton testified that she had seen Rodriguez previously, but also testified that she had never seen Walker with any drugs. What the State showed in this case, as it relates to the juvenile specification, is that Walker was intending to commit a crime in the vicinity of a juvenile. The mere intent to commit a crime is not sufficient to prove that Walker actually did commit a crime. The statute requires that the crime be committed in the vicinity of the juvenile, not merely planned.[1] Since there was no evidence presented that the crime of trafficking in drugs occurred in the vicinity of a juvenile, the evidence was not sufficient to support the

---

[1] If Walker had been allowed to pick up the pants with the drugs in the pocket and exit the residence before being arrested, he would have transported the drugs in the vicinity of a juvenile. Instead he was arrested before he could commit an offense in the vicinity of a juvenile.

finding that the underlying offenses of trafficking in heroin and oxycodone were completed in the vicinity of a juvenile. The first assignment of error is thus sustained.

*Ineffective Assistance of Counsel*

{¶20} The second, third, and fourth assignments of error all claim that Walker was denied effective assistance of counsel.

> **In evaluating whether a petitioner has been denied effective assistance of counsel, this court has held that the test is "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done."** *State v. Hester* **(1976), 45 Ohio St.2d 71, 74 O.O.2d 156, 341 N.E.2d 304, paragraph four of the syllabus. When making that determination, a two-step process is usually employed. "First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness."** *State v. Lytle* **(1976), 48 Ohio St.2d 391, 396–397, 2 O.O.3d 495, 498, 358 N.E.2d 623, 627, vacated on other grounds (1978), 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154.**
>
> **On the issue of counsel's ineffectiveness, the petitioner has the burden of proof, since in Ohio a properly licensed attorney is presumably competent. See** *Vaughn v. Maxwell* **(1965), 2 Ohio St.2d 299, 31 O.O.2d 567, 209 N.E.2d 164;** *State v. Jackson***, 64 Ohio St.2d at 110–111, 18 O.O.3d at 351, 413 N.E.2d at 822.**

*State v. Calhoun*, 86 Ohio St.3d 279, 289, 1999–Ohio–102, 714 N .E.2d 905. The failure to prove either 1) a substantial violation or 2) prejudice caused by the violation makes it unnecessary for a court to consider the other prong of the test. *State v. Anaya*, 191 Ohio App.3d 602, 2010-Ohio-6045, 947 N.E.2d 212, ¶ 25.

{¶21} In the second assignment of error Walker claims that counsel erred by failing to counter the State's DNA evidence. Walker argues that his counsel should have challenged the DNA test results establishing that the pants were likely his and establishing that he likely had contact with the drugs. However, in addition to the DNA connecting Walker to the pants, there was testimony from Dayton that she had seen Walker wearing the pants and the State presented a photograph taken from one of the phones found at the scene showing Walker wearing the pants. Thus, even if Walker's attorney had successfully raised doubts about the DNA test results, there was additional evidence to support the connection obviously made by the jury.

{¶22} Walker also argues that counsel was ineffective for not arguing that the level of probability on the DNA taken from the plastic bags containing the drugs and found in the pants' pockets was too low to state with any certainty that Walker was the one who had handled the bags. This evidence, along with the fact that the DNA sample was a mixture of DNA belonging to multiple people, was known by the jury. Knowing the exact identity of others who may have had contact with the bag would not necessarily have changed the outcome of the case. DNA comparison in cases like this merely shows who may have had contact with an item and who definitely did not. The fact that Wood, Wade, or Puryear may have also touched the bags would not mean that Walker did not. Reasonable jurors could still have concluded that the pants belonged to Walker and that the

-16-

drugs found inside the pants' pockets were also Walker's. Thus, the alleged errors argued by Walker were not substantial violations of Walker's rights and were not likely to have changed the outcome of the case. The second assignment of error is overruled.

{¶23} In the third assignment of error, Walker claims his counsel was ineffective for not moving to suppress his arrest and the items found during the search of his person incident to arrest. "[T]he failure to file a motion to suppress constitutes ineffective assistance of counsel only when the record establishes that the motion would have been successful if made." *State v. Brown*, 12th Dist. Warren No. CA2002-03-026, 2002-Ohio-5455, ¶ 11.

{¶24} Walker challenges his arrest claiming that the officers lacked probable cause to arrest him without a warrant. "When a felony has been committed, or there is reasonable ground to believe that a felony has been committed, any person without a warrant may arrest another whom he has reasonable cause to believe is guilty of the offense, and detain him until a warrant can be obtained." R.C. 2935.04. The evidence as known by the officers in this case is that 1) there was a pair of pants which had drugs and a large amount of cash in the pockets, 2) the pants allegedly belonged to someone known as "Moes", 3) "Moes" was allegedly coming to pick up the drugs, 4) Walker then arrived and was identified as "Moes" by Dayton. The officers suspected that the bags contained in the pants pockets were drugs that were being trafficked and had

-17-

reason to believe that the drugs belonged to the man identified as "Moes". The officers thus had reasonable grounds to believe that a felony had been committed and that "Moes", aka Walker, was the person guilty of that offense. The knowledge of the officers at the time provided probable cause to arrest Walker. Therefore, it is unlikely that any motion to suppress the arrest of Walker would have been successful. The third assignment of error is overruled.

{¶25} Finally, Walker claims that his counsel was ineffective for introducing the hearsay statement regarding Wade stating that Walker would be coming to get the drugs. This statement was used to show that Walker was engaging in drug trafficking in the vicinity of a juvenile in that she would be present when he removed the drugs from the premises. However, as discussed above, no evidence was presented that Walker committed the offense of trafficking in drugs in the presence of a juvenile and the specifications are not supported by sufficient evidence. The evidence in support of the convictions for trafficking in drugs is the identification of the ownership of the pants by both the testimony of a witness and the DNA on the pants, the drugs found in the pants' pockets, the multiple phones, the large amounts of cash found in the pants' pockets and on Walker, the messages from the phones, the videos from the phone, and the DNA found on the baggies containing the drugs. This evidence outside of the statement made by Wade was more than sufficient for a reasonable juror to conclude that Walker had committed the offense of drug trafficking. Without an

effect on the result of the case, an alleged error by counsel does not rise to the level of ineffective assistance of counsel. The fourth assignment of error is overruled.

**{¶26}** Having found error prejudicial to the appellant, the judgment of the Court of Common Pleas of Seneca County is reversed as to the findings that the crimes were committed in the vicinity of a juvenile. The judgment of the Court of Common Pleas of Seneca County is affirmed in all other aspects. The judgment is reversed and the case is remanded for resentencing.

*Judgment Affirmed in Part,*
*Reversed and Remanded in Part*

**SHAW, P.J., Concurs in Judgment Only**

**ROGERS, J., concurs.**

**/hls**