[Cite as *State v. Baker*, 2018-Ohio-3431.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

        PLAINTIFF-APPELLEE,

        v.

WILLIAM H. BAKER,

        DEFENDANT-APPELLANT.

CASE NO. 1-17-61

O P I N I O N

Appeal from Allen County Common Pleas Court
Trial Court No. CR20170118

**Judgment Affirmed**

Date of Decision:  August 27, 2018

APPEARANCES:

    *Michael J. Short* for Appellant

    *Jana E. Emerick* for Appellee

**WILLAMOWSKI, P.J.**

{¶1} Defendant-appellant William H. Baker ("Baker") appeals the judgment of the Allen County Court of Common Pleas, alleging (1) that his convictions were against the manifest weight of the evidence and (2) that he received ineffective assistance of counsel. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} On April 7, 2017, AB, who is Baker's daughter, was not feeling well and went into her father's bedroom to tell Baker that she was feeling nauseous. Tr. 49. Ex. 6. AB later testified that her father, at this point, began rubbing her back while she was sitting on his bed. Tr. 50. She said that Baker then began rubbing her sides and then her stomach. Tr. 52. AB testified that Baker moved his hands under her clothing and placed his fingers into her vagina. Tr. 51. She said that Baker, who was not wearing clothes, rolled AB onto her back, took AB's clothes off, and penetrated her with his tongue. Tr. 55, 59. AB testified that, as her father was undertaking these actions, she had her hands on her face and was saying "no" repeatedly to her father. Tr. 56. AB stated that Baker then put her clothes back on her and told her not to tell anyone about what had happened. Tr. 58.

{¶3} AB then went to school where she communicated to her boyfriend, TA, what Baker had allegedly done. Tr. 62-63. AB and TA told the school resource officer and the school guidance counselor what had happened. Tr. 89. Shortly

thereafter, AB had a full medical examination at Lima Memorial Hospital.  Tr. 134.

Later that day, Detective Nate Music ("Detective Music") interviewed Baker.  Tr.

241.  During this interview, Baker stated that he had been drinking on the night of

April 6, 2017, and indicated that he was unable to remember everything that

transpired on the morning of April 7, 2017.  Ex. 6.  He did, however, state what he

did remember from that morning.  Ex. 6.  This police interview with Baker was

recorded and admitted at trial.  Ex. 6.

{¶4} On October 19, 2017, Baker was found guilty of all of the charges

against him.  Doc. 86-93.  The trial court entered convictions for two counts of rape

in violation of R.C. 2907.02(A)(2), (B) and two counts of gross sexual imposition

in violation of R.C. 2907.05(A)(1), (C)(1).  Doc. 111.  Baker was sentenced on

December 18, 2017.  Doc. 111.  Baker filed his notice of appeal on December 22,

2107. Doc. 114.  On appeal, appellant raises the following two assignments of error:

**First Assignment of Error**

**The convictions are against the manifest weight of the evidence.**

**Second Assignment of Error**

**The defendant received ineffective assistance of counsel.**

*First Assignment of Error*

{¶5} Baker argues that the victim had a reputation for being untruthful.

Baker asserts that the jury, in basing their verdict on the victim's testimony, lost its

way and returned a verdict against the manifest weight of the evidence.

Legal Standard

**{¶6}** "When 'deciding whether a conviction is against the manifest weight of the evidence, an appellate court determines whether the state has appropriately carried its burden of persuasion.'" *State v. Brown*, 3d Dist. Hancock No. 5-17-19, 2018-Ohio-899, ¶ 8, quoting *State v. Blanton*, 121 Ohio App.3d 162, 169, 699 N.E.2d 136 (3d Dist.1997). "In a manifest weight analysis, 'the appellate court sits as a 'thirteenth juror' * * *." *State v. Davis*, 3d Dist. Seneca No. 13-16-30, 2017-Ohio-2916, ¶ 17, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Appellate courts "must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Brentlinger*, 2017-Ohio-2588, 90 N.E.3d 200, ¶ 36 (3d Dist.), quoting *Thompkins* at 387.

**{¶7}** "A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses." *Sullivan*, *supra*, at ¶ 38, quoting *State v. Coleman*, 3d Dist. Allen No. 1-13-53, 2014-Ohio-5320, ¶ 7. "[I]t is well established that the * * * credibility of the witnesses [is] primarily a matter for the trier of fact." *State v. Gervin*, 2016-Ohio-8399, 79 N.E.3d 59, ¶ 142 (3d Dist.), quoting *State v. Clark*, 101 Ohio App.3d 389, 409, 655 N.E.2d 795 (8th Dist.1995). "Only in exceptional cases, where the

evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Little*, 2016-Ohio-8398, 78 N.E.3d 323, ¶ 27 (3d Dist.), quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119.

{¶8} In this case, Baker was convicted of two counts of rape in violation of R.C. 2907.02(A)(2). To prove this crime, the State had to establish that Baker (1) engaged in sexual conduct with another (2) by purposely compelling the other person to submit by force or threat of force. R.C. 2907.02(A)(2). Baker was also convicted of two counts of gross sexual imposition in violation of R.C. 2907.05(A)(1). To prove this crime, the State had to establish that Baker (1) had sexual contact with another (2) by purposely compelling the other to submit by force or threat of force. R.C. 2907.05(A)(2).

Legal Analysis

{¶9} At trial, AB testified that she was feeling ill on the morning of April 7, 2017, and went into her father's bedroom. Tr. 49. She admitted that she was aware that her father often slept without wearing any clothes. Tr. 51. AB testified that Baker began rubbing her back before he began rubbing her side while she was sitting on his bed. Tr. 51. From there, Baker began rubbing AB's stomach and then reached under her clothes, placing his fingers inside of her vagina. Tr. 52-53. AB testified that Baker then rolled her onto her back and took off her clothes. Tr. 55. At this point, Baker, who was not wearing clothes, began licking her stomach and

eventually penetrated her vagina with his tongue. Tr. 55, 59. During this process, AB had her hands on her face and was telling her father "no." Tr. 56. AB testified that her father then put her clothes back on her and asked her not to tell anyone about this incident. Tr. 58.

{¶10} AB testified that she had been grounded prior to this incident and had her phone privileges taken away by Baker. Tr. 59. After Baker asked her not to tell anyone about this incident, he gave AB her phone back and the privileges that he had rescinded as part of her punishment. Tr. 59. AB also testified that this was the first time that Baker had touched her in a sexual manner, though he had previously made comments about her appearance that had made her feel uncomfortable. Tr. 61, 78. She further stated that a number of her family members had accused her of lying to get Baker into trouble. Tr. 70. On cross examination, she admitted that she did not believe, at the time she reported this incident, that Baker would get into this much trouble. Tr. 77.

{¶11} The State called AB's school guidance counselor, Melissa Schultz ("Schultz"), as a witness. Schultz testified that AB reported Baker's actions to her on April 7, 2017. Tr. 96-97. Schultz stated that AB said she "flipped out" when her father began to touch her private area. Tr. 101. However, AB, during her testimony, stated that she used a "soft voice" and "mumbled 'no'" as Baker touched her. Tr. 55, 57. The State also called Nicole Mikesell ("Mikesell"), who works for the Allen County Children Services Board. Mikesell testified that she was with Detective

Music when he called Baker to schedule an interview. Tr. 116-117. She listened to this conversation and said that Baker

> **immediately started crying. He stated that he was a horrible human being, a horrible parent, that his role was to protect his child and he hurt her. He admitted during the conversation that he had been drinking and he thought there was someone else in his bed.**

Tr. 116.

{¶12} At the request of the State, the trial court admitted the recorded police interview with Baker into evidence. Ex. 6. This interview occurred on April 7, 2017. Tr. 241-242. At the beginning of this interview, Baker told Detective Music the following: "I'm a horrible person. * * * Is my daughter okay?" Ex. 6. Baker then said: "I've been trying to do stupid little things to get it off my [inaudible], but I can't. * * * And I don't even know what happened. * * * I'm going through enough and my daughter's going through worse." Ex. 6. Detective Music then asked Baker to explain what happened that morning. Ex. 6. Baker explained that he had gone to a club the night before and had been drinking. Ex. 6.

{¶13} Detective Music mentioned that AB indicated that she had gone into Baker's room because she was not feeling well. Ex. 6. In response, Baker said: "That's what she told me after I came to." Baker then described what happened next:

> **She left my room I guess. I fell back out. Next thing I know, I wake up and the position I was in. I was between my daughter's**

**legs. And I came through as I looked up at my daughter. And I'm like, I was just in awe, like what the hell? What's going on?**

Ex. 6. Baker then suggested that he was acting under the mistaken impression that he was in bed with a female friend of his who would come to his house on occasion.

Ex. 6. Baker said:

**I don't know if I was dreamin' that I was touching her [Baker's female friend] or what. I was touching between my daughter's legs and obviously I was naked and my daughter's pants and panties was off. And I was just like in awe. I got off of her, picked up her clothes, and put them on her, and started apologizing, trying to talk to her.**

Ex. 6. Detective Music then asked what Baker meant when he said he was "touching between [his] daughter's legs." Ex. 6. In response, Baker said: "My lower half was at the lower half of her body. But I was not in her." Ex. 6. Baker added, "I hope nothing happened * * * I felt that I did something wrong to my daughter, yeah." Ex. 6. "I didn't know what happened. I asked her not to tell anyone." Ex. 6. He then reiterated that he "begged her not to tell anyone." Ex. 6. Baker also admitted that he apologized to AB and returned his daughter's phone to her. Ex. 6.

{¶14} Detective Music testified about several recorded phone conversations that Baker made from jail to several people. Tr. 252-253. In one of these conversations, Baker told another person to contact the local juvenile court in an attempt to get AB arrested. Tr. 250. According to Music's testimony, on other calls, Baker said

> **If she [AB] doesn't recant all of this, just tell her that I don't want to be any part of her life anymore. If she comes off of this now, it's not too late to turn around and we can go back on all of this. You just—you need to get ahold of her and explain this to her.**

Tr. 251. Baker, over the phone, also told his estranged wife and AB's stepmother, Kelly Baker ("Kelly"), that "[s]he [AB] is a fifteen-year-old f****** b**** and she needs her head bashed in." Tr. 252. Music also testified that AB's statements to him were consistent during the course of this investigation. On cross examination, Music admitted that Baker did not, during the police interview, admit to committing the crimes charged against him. Tr. 253. Ex. 6.

{¶15} At trial, Gayle Chaney, a registered nurse, testified that she swabbed AB's abdomen to collect a sample for DNA testing. Tr. 141. Timothy Augsback ("Augsback"), an expert from the Ohio Bureau of Criminal Investigation, examined these samples and compared them to a standard obtained from Baker. At trial, Augsback testified that the samples contained DNA that was consistent with Baker's profile. Tr. 208-209.

{¶16} The Defense called several witnesses at trial. Kelly testified that AB was not a truthful person. Tr. 261-262. On cross examination, she testified that she had been separated from Baker for about two years. Tr. 263. She also testified that she had sent texts to AB that stated she was disappointed in AB. Tr. 264. William Baker Sr., who is Baker's father, testified that AB is not a truthful person. Tr. 270. On cross examination, Baker's father admitted that Baker had attempted to get him

to talk AB into recanting her allegations against Baker. Tr. 274. Abby Prater ("Prater"), Baker's stepdaughter, also testified that AB was not a truthful person. Tr. 277. On cross examination, Prater admitted to sending several texts to AB that encouraged her to withdraw the charges against Baker. One of these texts read as follows: "If he [Baker] isn't found guilty then it's going to come back on you and you're going to get in a lot of trouble." Tr. 282.

{¶17} After considering the evidence on the basis of its weight and credibility, we do not find that the verdict was against the manifest weight of the evidence. The jury, as finder of fact, could determine that AB's testimony was credible. On review of the record, we find that the jury could have reasonably concluded from the evidence at trial that Baker was guilty of the charges against him. Further, we do not see any indication in the record that the jury lost its way and returned a verdict against the manifest weight of the evidence. For these reasons, Baker's first assignment of error is overruled.

*Second Assignment of Error*

{¶18} Baker argues that his trial counsel made several comments during closing arguments that conceded his guilt in this case. Baker asserts that these comments conceded the case to the State and constituted ineffective assistance of counsel.

Legal Standard

**{¶19}** "Under Ohio law, 'a properly licensed attorney is presumed to carry out his duties in a competent manner.'" *State v. Beaver*, 3d Dist. Marion No. 9-17-37, 2018-Ohio-2438, ¶ 26, quoting *State v. Gee*, 3d Dist. Putnam No. 12-92-9, 1993 WL 270995 (July 22, 1993). In order to prove an ineffective assistance of counsel claim, the appellant must carry the burden of establishing (1) that his or her counsel's performance was deficient and (2) that this deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). If the petitioner cannot prove one of these elements, "it [is] unnecessary for a court to consider the other prong of the test." *State v. Walker*, 2016-Ohio-3499, 66 N.E.3d 349, ¶ 20 (3d Dist.). The first prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 61.

**{¶20}** "Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance." *State v. Pellegrini*, 3d Dist. Allen No. 1-12-30, 2013-Ohio-141, ¶ 40. "[T]he manner and content of trial counsel's closing arguments are a matter of trial strategy and do not constitute ineffective assistance of counsel." *State v. Turks*, 3d Dist. Allen No. 1-08-44, 2009-Ohio-1837, ¶ 42. Appellate courts are to examine the record to determine whether the defendant had a fair proceeding under the circumstances and whether substantial justice was done.

*State v. Hester*, 45 Ohio St.2d 71, 341 N.E.2d 304 (1976), paragraph four of the syllabus.

Legal Analysis

**{¶21}** In this assignment of error, Baker identifies a portion of his trial counsel's closing argument. This portion of the Defense's closing argument reads as follows:

> **I started by telling you that we were going to talk about honesty and clarity. You saw the video of Mr. Baker's interview. It's pretty awful. He makes some incriminating statements that, to be perfectly honest, are very incriminating. In the moment, under pressure, having just woken up, not knowing what the heck is going on, and then later in the interview room, after an entire day of trying to figure out what's going on, being \* \* \* interviewed by Detective Music, he believes his daughter. He believes what is being relayed. He feels awful because it's like, well, no reason to doubt her. But, then he sits and he thinks, and he's like 'I don't remember doing any of those things.' He even said on the interview repeatedly, 'I don't remember doing that.' 'I don't remember doing that.'**
>
> **So, as time goes on, he calls his family and he's determined that, 'I didn't do it and you need to get her to change her story. I didn't do this.' Did he say some terrible things? Absolutely. One hundred percent. I'm not going to deny it. He said some pretty awful, terrible things. He was angry. He's in jail because he's been falsely accused of this terrible crime. So, he does some pretty stupid stuff. He says some pretty stupid things. That doesn't mean he did it.**

Tr. 311-312. We begin our analysis of these comments by noting that the jurors were instructed that the content of closing arguments was not evidence and should not be considered as evidence. Tr. 297. Further, we presume that the jurors

followed the trial court's instructions.  *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 292.

**{¶22}** In making these comments, Baker's trial counsel was addressing the most damaging evidence against Baker and was providing the jury with an explanation for Baker's incriminating statements.  While these comments admitted that Baker had previously made incriminating statements in an interview with the police, the closing arguments made by Baker's trial counsel did not incriminate Baker.  Tr. 243.  Further, these comments did not contain an admission of Baker's guilt.  After examining the record, we find that the trial counsel's performance was not deficient such that Baker was deprived of his Sixth Amendment right to the effective assistance of counsel.  Thus, Baker's second assignment of error is overruled.

*Conclusion*

**{¶23}** Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of Allen County Court of Common Pleas is affirmed.

***Judgment Affirmed***

**SHAW and PRESTON, J.J., concur.**

**/hls**