[Cite as *State v. Miller*, 2020-Ohio-3504.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

      CASE NO. 8-19-28

    v.

NOEL E. MILLER, JR.,           O P I N I O N

    DEFENDANT-APPELLANT.

---

**Appeal from Logan County Common Pleas Court
Trial Court No. CR 18 11 0349**

**Judgment Affirmed**

**Date of Decision:  June 29, 2020**

---

APPEARANCES:

    *William T. Cramer* **for Appellant**

    *Eric C. Stewart* **for Appellee**

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Noel E. Miller, Jr. ("Noel") appeals the judgment of the Logan County Court of Common Pleas, alleging (1) that he was denied his right to the effective assistance of counsel; (2) that his conviction is not supported by sufficient evidence; and (3) that his conviction is against the manifest weight of the evidence. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} On November 13, 2018 at 6:22 P.M., Officer Logan Miller ("Officer Miller") was driving on patrol. Tr. 71. He testified that he observed a vehicle turn right onto the highway and then "accelerat[e] at a rapid pace" that was "faster than [a] normal pace." Tr. 72-73. Officer Miller's radar detected this vehicle reaching a speed of sixty-one miles per hour on a stretch of highway where the posted speed limit was fifty miles per hour. Tr. 76. At this point, Officer Miller initiated a traffic stop of this vehicle. Tr. 77. Noel was the driver of this vehicle. Tr. 77. There was another individual in the front passenger seat of the vehicle. Tr. 78.

{¶3} As Officer Miller began to speak with Noel, he observed an open beer can in the center console and had smelled the odor of an alcoholic beverage coming from the vehicle. Tr. 77, 78, 80. Officer Miller testified that Noel had "glassy eyes" and that his responses to questions were "a little bit delayed * * *." Tr. 77, 94. He further testified that Noel appeared to be "confused" as to why he had been stopped.

Tr. 77. Officer Miller asked if there were any other alcoholic beverage containers in the vehicle. Ex. 1. *See* Tr. 77. At this point, Noel produced three more alcoholic beverage containers in addition to the open container in the console. Tr. 77, 79. Of these three containers, one was empty. Tr. 79. One was half full and still cold. Tr. 79. One was still sealed. Tr. 79.

{¶4} Officer Miller then asked Noel if he had been drinking. Tr. 80. When asked what Noel stated in reply, Officer Miller testified, "I believe he initially just said, * * * one or two. I couldn't say for certain what his initial response was." Tr. 80. On Officer Miller's request, Noel agreed to perform field sobriety tests. Tr. 82. Officer Miller testified that he began to administer the Horizontal Gaze Nystagmus Test ("HGN Test"). Tr. 82. Officer Miller testified that he observed four clues before Noel stopped cooperating during the process of administering the HGN Test. Tr. 82, 85, 86. Officer Miller stated that he then asked Noel to perform further testing but that Noel refused. Tr. 82, 93.

{¶5} When Officer Miller asked how many beers he had consumed, Noel replied, "three or four." Ex. 1. *See* Tr. 86, 90. At trial, Noel disputed having made this statement, testifying that he does not drive if he has consumed more than two beers. Tr. 131. Noel also indicated that he had marijuana in a cigarette packet in his pocket. Tr. 92. *See* Ex. 1. Officer Miller then examined this cigarette packet and discovered a joint inside. Tr. 92. The joint was not burnt and did not appear to have been used. Tr. 100.

{¶6} On December 11, 2018, Noel was indicted on one count of operating a vehicle under the influence of alcohol, a drug of abuse, or a combination of them ("OVI") in violation of R.C. 4511.19(A)(1)(a) and one count of OVI in violation of R.C. 4511.19(A)(2)(a). Doc. 4. Noel's jury trial was held on April 25, 2019. Tr. 1. At trial, the video footage from Officer Miller's body camera was introduced as evidence. Ex. 1. The jury returned verdicts of guilty on both charges against Noel on April 26, 2019. Doc. 37, 38. Noel's sentencing hearing was held on June 5, 2019. Doc. 40. At this hearing, the State elected to proceed on the first count in the indictment for the purposes of merger. Doc. 40. As a result, Noel received an OVI conviction for violating R.C. 4511.19(A)(1)(a). Doc. 40.

{¶7} The appellant filed his notice of appeal on June 10, 2019. Doc. 52. On appeal, Noel raises the following assignments of error:

### First Assignment of Error

**Appellant was deprived of his state and federal constitutional rights to the effective assistance of counsel when counsel failed to adequately investigate the bias of the jury pool after a prejudicial comment from one juror during voir dire.**

### Second Assignment of Error

**Appellant was deprived of his state and federal constitutional rights to due process by a conviction for operating a vehicle while under the influence of alcohol that was not supported by sufficient evidence.**

**Third Assignment of Error**

**Appellant's conviction for operating a vehicle while under the influence of alcohol was not supported by the weight of the evidence.**

*First Assignment of Error*

{¶8} Noel argues that he was deprived of his right to the effective assistance of counsel because his trial counsel failed to ensure that the jurors were not biased by a comment made by a prospective juror.

Legal Standard

{¶9} "Under Ohio law, 'a properly licensed attorney is presumed to carry out his duties in a competent manner.'" *State v. Harvey*, 3d Dist. Marion No. 9-19-34, 2020-Ohio-329, ¶ 57, quoting *State v. Gee*, 3d Dist. Putnam No. 12-92-9, 1993 WL 270995 (July 22, 1993). For this reason, the appellant has the burden of proving that he or she was denied the right to the effective assistance of counsel. *Brown, supra*, at ¶ 42. "In order to prove an ineffective assistance of counsel claim, the appellant must carry the burden of establishing (1) that his or her counsel's performance was deficient and (2) that this deficient performance prejudiced the defendant." *State v. McWay*, 3d Dist. Allen No. 1-17-42, 2018-Ohio-3618, ¶ 24, quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶10} In order to establish deficient performance, the appellant must demonstrate that trial "counsel made errors so serious that counsel was not

functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *State v. Howton*, 3d Dist. Allen No. 1-16-35, 2017-Ohio-4349, ¶ 35, quoting *Strickland* at 687. In order to establish prejudice, "the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *State v. Davis,* 3d Dist. Seneca No. 13-16-30, 2017-Ohio-2916, ¶ 36, quoting *State v. Bibbs*, 2016-Ohio-8396, 78 N.E.3d 343, ¶ 13 (3d Dist.). If the appellant does not establish one of these two prongs, the appellate court does not need to consider the facts of the case under the other prong of the test. *State v. Baker*, 3d Dist. Allen No. 1-17-61, 2018-Ohio-3431, ¶ 19, citing *State v. Walker,* 2016-Ohio-3499, 66 N.E.3d 349, ¶ 20 (3d Dist.).

{¶11} "[D]ebatable trial tactics do not establish ineffective assistance of counsel." *State v. Queen*, 3d Dist. Logan No. 8-19-41, 2020-Ohio-618, ¶ 14, quoting *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 101. "[C]ounsel's actions during voir dire are presumed to be matters of trial strategy." *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 206, quoting *Miller v. Francis*, 269 F.3d 609, 615 (6th Cir. 2001). The Ohio Supreme Court has held that

> '[f]ew decisions at trial are as subjective or prone to individual attorney strategy as juror voir dire, where decisions are often made on the basis of intangible factors.' *Miller* [at] 620. 'The selection of a jury is inevitably a call upon experience and intuition. The trial lawyer must draw upon his own insights and empathetic abilities. Written records give us only shadows for measuring the quality of such efforts. * * * [T]he selection process

**is more an art than a science, and more about people than about rules.'** *Romero v. Lynaugh* **(C.A.5, 1989), 884 F.2d 871, 878. For these reasons, we have recognized that 'counsel is in the best position to determine whether any potential juror should be questioned and to what extent.'** [*State v.*] *Murphy***, 91 Ohio St.3d [516,] 539, 747 N.E.2d 765 [(2001)];** *see also* **[***State v.***] *Bradley***, 42 Ohio St.3d [136,] 143, 538 N.E.2d 373 [(1989)].**

*State v. Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836, 873 N.E.2d 828, ¶ 64.

Legal Analysis

{¶12} The basis of Noel's ineffective assistance of counsel claim is the following exchange that occurred between the State and a prospective juror during voir dire:

> **[Prosecutor]: You indicated there's a family connection between you and the defendant?**
>
> **[Prospective Juror]: My uncle and my father are friends of his. They hang out.**
>
> **\* \* \***
>
> **[Prosecutor]: Okay. Do you know him at all? Do you hang out with him?**
>
> **[Prospective Juror]: I've met him on several occasions. I can't say that we hang out.**
>
> **[Prosecutor]: Okay. So you don't hang out, but do you feel that that—that family connection, then, would cause you some— would it be uncomfortable of you to sit in judgment of the defendant?**
>
> **[Prospective Juror]: Somewhat, yes.**
>
> **[Prosecutor]: Why is that?**

> **[Prospective Juror]:  Because they're all drinking buddies.**
>
> **[Defense Counsel]:  Objection.**
>
> **[Court]:  I couldn't hear it, so—**
>
> **\* \* \***
>
> **[Prosecutor]:  There should probably be an instruction to ignore that comment.**
>
> **[Court]:  All right.  I didn't hear the comment, so—but I'm going to ask the jurors ignore and not to consider that comment.**

Tr. 26-27.  Noel argues that his trial counsel should have requested the opportunity to question the each juror individually to determine whether any of them had been biased by this comment.  Appellant's Brief, 6.

{¶13} On appeal, Noel has identified a decision made by his trial counsel that falls within the ambit of trial strategy and debatable trial tactics.  *See State v. Costell*, 3d Dist. Union No. 14-15-11, 2016-Ohio-3386, ¶ 154.  However, he has only sketched the outlines of a different strategy that his trial counsel could have followed during voir dire.  *State v. Mason*, 82 Ohio St.3d 144, 157, 694 N.E.2d 932, 949 (1998).  In this case, Noel's critique of debatable trial tactics on appeal is not, by itself, sufficient to establish that his trial counsel's performance was deficient.

{¶14} Further, even if Noel had established deficient performance, he has not demonstrated prejudice.  He has not advanced an argument on appeal that established how he would have been found not guilty in the absence of this comment.  We also note that the trial judge directed the jurors to disregard the

comment made by the prospective juror. "A jury is presumed to follow the instructions, including curative instructions, given it by a trial judge." *State v. Garner*, 74 Ohio St.3d 49, 59, 1995-Ohio-168, 656 N.E.2d 623, 634 (1995). Noel also has not advanced an argument on appeal that would lead us to dispense with this presumption.

{¶15} After examining the appellant's arguments, we conclude that Noel has not carried the burden of demonstrating that he was deprived of his right to the effective assistance of counsel. His arguments do not establish that his trial counsel's performance was deficient or that he was prejudiced by his trial counsel's representation. For these reasons, Noel's first assignment of error is overruled.

*Second Assignment of Error*

{¶16} Noel argues that his conviction is not supported by sufficient evidence because "there was very little evidence" that his actions were impaired by "the limited amounts of alcohol" that he had consumed. Appellant's Brief, 10.

Legal Standard

{¶17} A challenge to the sufficiency of the evidence supporting a conviction "is a question of law and a 'test of adequacy rather than credibility or weight of the evidence.'" *State v. Beaver*, 3d Dist. Marion No. 9-17-37, 2018-Ohio-2438, ¶ 40, quoting *State v. Berry*, 3d Dist. Defiance No. 4-12-03, 2013-Ohio-2380, ¶ 19. "The sufficiency-of-the-evidence analysis addresses the question of whether adequate evidence was produced for the case to be considered by the trier of fact and, thus,

whether the evidence was 'legally sufficient to support the verdict * * *.'" *State v. Luebrecht*, 3d Dist. Putnam No. 12-18-02, 2019-Ohio-1573, ¶ 36, quoting *State v. Worthington*, 3d Dist. Hardin No. 6-15-04, 2016-Ohio-530, ¶ 12. On appeal, the applicable standard

> **is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.**

*State v. Brown*, 3d Dist. Hancock No. 5-17-19, 2018-Ohio-899, ¶ 8, quoting *State v. Plott*, 2017-Ohio-38, 80 N.E.3d 1108, ¶ 73 (3d Dist.).

{¶18} To demonstrate a violation of R.C. 4511.19(A)(1)(a), the prosecution must establish that the defendant "[1] operate[d] any vehicle * * * [2] within this State" [3] while "under the influence of alcohol, a drug of abuse, or a combination of them." R.C. 4511.19(A)(1)(a). Under R.C. 4511.19(G)(1)(e), if the defendant is convicted of violating R.C. 4511.19(A) and has previously been convicted of violating R.C. 4511.19(A), then the defendant's offense is a felony of the third degree. R.C. 4511.19(G)(1)(e).

Legal Analysis

{¶19} In this case, Officer Miller testified that he had participated in the investigation of between twenty and thirty OVI violations. Tr. 70. He stated that, on November 13, 2018, that he observed Noel operate a vehicle in Logan County in violation of the posted speed limit while accelerating at a rapid pace. Tr. 71, 72, 76,

77. Officer Miller stated that, after he initiated a traffic stop, he smelled the odor of an alcoholic beverage as he approached Noel's vehicle. Tr. 80. He stated that Noel's eyes were "glassed over, glossy" and that he could see an open beer can in the console. Tr. 78-79. Officer Miller also testified that, after he had informed Noel that he had been speeding, Noel indicated that he was "confused" as to why he had been stopped. Tr. 77.

{¶20} Officer Miller then testified that Noel produced three more cans of beer in addition to the can of beer in the console. Tr. 79. One of these cans was open and empty. Tr. 79. One was open and half full. Tr. 79. The final can was unopened and full. Tr. 79. Officer Miller stated that these cans were still cold at the time of the stop. Tr. 79. According to Officer Miller, Noel admitted that he had been drinking, though he denied that the cans of beer in the car were his. Tr. 80, 90, 102. Noel reportedly stated, "I had a few beers." Tr. 90, 102. Officer Miller testified that he then asked Noel how many beers he had drank. Tr. 90. Noel reportedly responded by stating that he had "[t]hree or four" beers. Tr. 90, 102.

{¶21} Officer Miller then testified that Noel initially agreed to perform field sobriety tests. Tr. 82. Officer Miller began to administer the HGN Test, but Noel stopped cooperating before this test had been completed. Tr. 85. Prior to Noel's refusal to continue with the HGN Test, Officer Miller was able to detect and confirm four out of the four clues for which Noel had been tested. Tr. 86. Officer Miller

testified that he detected the fifth clue but did not have an opportunity to confirm its presence with a second check before Noel stopped complying. Tr. 86.

{¶22} Upon Noel's refusal to continue testing, Officer Miller gave him a copy of the Bureau of Motor Vehicle's Form 2255. Ex. 2. Tr. 92. This form had been signed by Noel and was introduced as evidence at trial. Ex. 2. Tr. 92-93. Officer Miller also testified that Noel's "responses were a little bit delayed * * *." Tr. 94. The State also introduced a certified copy of a prior conviction from May 9, 2005 that Noel had received for driving while under the influence of alcohol or drugs in violation of R.C. 4511.19(A)(1)(a). Tr. 94. Ex. 3.

{¶23} At trial, the State also introduced a video recording from Officer Miller's body camera. Ex. 1. On this video, Officer Miller can be seen approaching Noel's vehicle. Ex. 1. Upon observing the open container in Noel's console, Officer Miller asked if there were any other containers. Ex. 1. In response, Noel produced additional cans of beer but stated that the cans were not his. Ex. 1. The body camera also captured footage of Officer Miller performing the HGN Test. Ex. 1. When asked how much he had been drinking, Noel stated, "I drank a few beers." Ex. 1. Officer Miller can be heard asking Noel how many beers he had drank. Ex. 1. In response, Noel can be heard saying that he had "three or four" beers before he began driving. Ex. 1. Noel also admitted to having a prior OVI conviction. Ex. 1. Noel can also be seen refusing to continue with field sobriety testing. Ex. 1.

{¶24} After viewing the materials in the record in a light most favorable to the prosecution, we conclude that there is evidence from which a rational trier of fact could find that Noel operated a vehicle in violation of R.C. 4511.19(A)(1)(a). For this reason, Noel's conviction is supported by sufficient evidence. Thus, the trial court did not err in denying Noel's Crim.R. 29 motion. *See* Tr. 104, 108, 134, 135. His second assignment of error is overruled.

*Third Assignment of Error*

{¶25} Noel argues his conviction is against the manifest weight of the evidence because "there [is] no credible evidence that [he] was impaired by alcohol." Appellant's Brief, 12.

Legal Standard

{¶26} In a manifest weight analysis, "an appellate court's function * * * is to determine whether the greater amount of credible evidence supports the verdict." *Plott, supra*, at ¶ 73. Thus, "the appellate court sits as a 'thirteenth juror' * * *." *Davis*, *supra*, ¶ 17, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Appellate courts

> **must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'**

*State v. Brentlinger*, 2017-Ohio-2588, 90 N.E.3d 200, ¶ 36 (3d Dist.), quoting *Thompkins* at 387.

**{¶27}** "A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses." *State v. Sullivan*, 2017-Ohio-8937, 102 N.E.3d 86, ¶ 38 (3d Dist.), quoting *State v. Coleman*, 3d Dist. Allen No. 1-13-53, 2014-Ohio-5320, ¶ 7. "[I]t is well established that the * * * credibility of the witnesses [is] primarily a matter for the trier of fact." *State v. Gervin*, 2016-Ohio-8399, 79 N.E.3d 59, ¶ 142 (3d Dist.), quoting *State v. Clark*, 101 Ohio App.3d 389, 409, 655 N.E.2d 795 (8th Dist. 1995). "Only in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Little*, 2016-Ohio-8398, 78 N.E.3d 323, ¶ 27 (3d Dist.), quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119.

Legal Analysis

**{¶28}** We reincorporate the evidence presented under the second assignment of error and proceed to examining the evidence in this case according to its weight. On cross examination, Officer Miller admitted that Noel did not state when he had been drinking that day and stated that he did not observe Noel stagger. Tr. 97, 100. Further, Officer Miller stated that there was no indication that the joint that Noel had in his possession had been used or that Noel was under the influence of marijuana. Tr. 100-101.

{¶29} The Defense called Noel's dog sitter, Julie Weingardner ("Weingardner"); one of Noel's friends, Donald Patrick ("Patrick"); and Noel's employer, Blain Bowman ("Bowman") as witnesses. Tr. 112, 115, 119. Noel also testified in his own defense. Tr. 125. Weingardner testified that Noel came to her house in between 9:15 and 9:30 A.M. on the morning of November 13, 2018. She further stated that there was no alcohol on Noel's breath that morning; that he was at her house for about three minutes; and that she did not see him after he dropped off his dog at her house that morning. Tr. 116, 117.

{¶30} Patrick testified that Noel visited him at around 11:00 A.M. on November 13, 2018 and stayed with him for about an hour. Tr. 112. Patrick stated that Noel did not drink at that time; that Noel did not appear to have been intoxicated at that time. Tr. 112, 113. He admitted that he did not have any contact with Noel that day after his visit. Tr. 113. On cross examination, Patrick further admitted that he did not have any contact with Noel in the six hours in between Noel's departure from their visit and the time that Officer Miller stopped Noel's vehicle. Tr. 114.

{¶31} Bowman testified that he had hired Noel to perform some work at his house. Tr. 119. He stated that Noel arrived at his house at around 1:30 P.M. on the afternoon of November 13, 2018. Tr. 119. He stated that Noel did not appear to be intoxicated at that time and that he did not witness Noel drink any alcohol that day. Tr. 120, 121, 122. Bowman testified that he left his house at around 4:00 P.M. and

that Noel was still working at the house at that time. Tr. 124. On cross-examination, Bowman admitted that he did not see Noel after 4:00 P.M. on that day. Tr. 124.

{¶32} Noel testified that he drank a beer around 2:30 P.M. while he was eating his lunch. Tr. 127, 130. He later stated that it was not normal for him to have been drinking while he was working. Tr. 130. He then testified that he opened another beer around 5:50 P.M. but also stated that he only drank one half of this beer. Tr. 128. Thus, he admitted to drinking "[o]ne and a half" beers that day. Tr. 128. He testified that he refused to continue with field sobriety tests because he "didn't want to help him [Officer Miller] do his job." Tr. 128.

{¶33} On cross examination, Noel denied telling Officer Miller that he had "three or four" beers. Tr. 131. However, the State introduced the recording from Officer Miller's body camera in which Noel can be heard stating that he had "three or four" beers. Ex. 1. Noel then stated that the cans of beer in his vehicle did not belong to him but belonged to the passenger with him. Tr. 131. When asked whether he was aware that the passenger told the police that the cans of beer belonged to Noel, he stated that this meant the passenger "perjured himself." Tr. 131. *See* Ex. 1. Noel testified that the beers came from Bowman's garage. Tr. 129. While he admitted to having used marijuana frequently, Noel stated that he was not under the influence of marijuana that night. Tr. 132.

{¶34} Noel further testified that he did not believe that he was intoxicated at the time that he was stopped. Tr. 132. He testified that he "dr[a]nk two beers, [he]

wo[uld]n't get behind the wheel." Tr. 131. However, Noel also admitted that he had multiple OVI convictions. Tr. 128, 132. He affirmed that he had "a lot at stake" because he could "go back to prison * * *." Tr. 134. When asked why he refused to perform field sobriety tests, Noel reiterated that it was Officer Miller's job "to prove [him] guilty." Tr. 133.

**{¶35}** After examining the testimony at trial, we note that Weingardner, Patrick, and Bowman did not offer any testimony that conflicted with Officer Miller's testimony. Their statements, if true, would tend to establish that Noel was not intoxicated before 4:00 P.M. on November 13, 2018. Tr. 112, 116, 120, 124. However, Officer Miller's testimony addresses Noel's condition at 6:22 P.M. in the evening. Tr. 72. Further, most of Officer Miller's testimony is confirmed by the contents of the video recording that was admitted at trial. Ex. 1.

**{¶36}** While portions of Noel's testimony do conflict with portions of Officer Miller's testimony, "the fact that there is conflicting testimony presented at trial does not establish that a conviction is against the manifest weight of the evidence." *Harvey*, *supra*, ¶ 47. *See* Tr. 77, 86, 90, 94, 131. "The finder of fact is free to believe all, some, or none of the testimony of each witness appearing before it." *State v. Houdeshell*, 3d Dist. Hancock No. 5-18-02, 2018-Ohio-5217, ¶ 39.

**{¶37}** After reviewing the evidence in the record, we conclude that this case does not present the exceptional situation in which the evidence weighs heavily against the conviction. Further, there is no indication in the record that the jury lost

its way and returned a verdict against the manifest weight of the evidence. Thus, Noel's third assignment of error is overruled.

*Conclusion*

{¶38} Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of Logan County Court of Common Pleas is affirmed.

***Judgment Affirmed***

**SHAW P.J. and ZIMMERMAN J., concur.**

**/hls**