[Cite as *State v. Smith*, 2011-Ohio-664.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 09CA3128 |
| | : | |
| vs. | : | **Released: February 8, 2011** |
| | : | |
| JOHN F. SMITH, | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

Robert F. Benintendi, Batavia, Ohio, for Defendant-Appellant.

Michael M. Ater, Ross County Prosecuting Attorney, and Richard W. Clagg, Ross County Assistant Prosecuting Attorney, Chillicothe, Ohio, for Plaintiff-Appellee.

_____

McFarland, J.:

{¶1}   John F. Smith, Defendant-Appellant, appeals the decision of the Ross County Court of Common Pleas, denying his petition for post-conviction relief based on ineffective assistance of counsel.  Smith argues the court erred in finding that his petition was barred by res judicata and in finding that he failed to establish adequate grounds for his petition. However, the evidence Smith relied on in his postconviction petition was in the trial court record and available during his direct appeal.  Further, ineffective assistance is not demonstrated merely because a postconviction

petition presents new expert opinion that is different from a theory used at trial. As such, we find the trial court properly determined that Smith's postconviction petition was barred by the doctrine of res judicata.

I. Facts

{¶2}     John Smith was indicted on one count of felonious assault and one count of involuntary manslaughter for causing the death of Bryan Biser. During an argument among several people, Smith, without provocation, punched Biser in the head. After Smith struck him, Biser immediately fell, his face hitting a parked car and his head hitting the pavement below. Biser was knocked unconscious as a result.

{¶3}     Biser was transported to the hospital where he informed medical personnel that he suffered from diabetes. He refused emergency room treatment for his head injuries and diabetes, though he had a highly elevated blood-glucose level. Biser stated that he had insulin at home and did not want to purchase more at the hospital. He also refused to have a CAT scan, as recommended by the emergency room doctor. The doctor discharged Biser, but ordered him to return immediately if he experienced any vomiting, confusion or vision problems.

{¶4}     For the next several days, friends who stopped at Biser's residence found him to be confused, complaining of pain, and wishing to be

left alone.  Four days after Smith struck him, Biser was found lying unconscious on the floor of his residence.  His feet and left arm had turned black and he was struggling to breathe.

{¶5}    At the emergency room, a CAT scan of Biser's head revealed a possible skull fracture, a small subdural hematoma, and subarachnoid hemorrhage.  Biser was also in severe diabetic ketoacidosis, a condition resulting from failure to take insulin.  Exploratory surgery revealed necrotic bowel and colon tissue, which was terminal.  Biser died several hours after surgery.  After an autopsy, the cause of death was ruled to be homicide due to blunt force craniocerebral injuries.

{¶6}    Smith was indicted for felonious assault and involuntary manslaughter and the matter proceeded to trial.  Dr. William Cox, a forensic neuropathologist for the county coroner, testified that the cause of death listed on the death certificate was incorrect.  Instead, Cox stated that Biser's death was a result of diabetic ketoacidosis.  He testified that Smith's punch to Biser's head and Biser's head striking the ground caused Biser to suffer contusions to his brain that damaged his frontal lobes.  Cox testified that the damage to Biser's frontal lobes affected his cognitive ability and made him apathetic, uninhibited and disinterested.  He further testified that Biser's head injury substantially contributed to his death, and the damage to his

frontal lobes "clearly would have adversely affected [Biser's] ability to look after himself."

{¶7}     The jury found Smith guilty of both felonious assault and involuntary manslaughter.  The trial court merged the two counts and sentenced Smith to eight years in prison.  Smith filed a direct appeal and we affirmed his conviction and sentence in *State v. Smith*, 4th Dist. No. 06CA2893, 2007-Ohio-1884.  Smith then appealed our decision in the Supreme Court of Ohio, which the Court dismissed.

{¶8}     While his direct appeal was pending, Smith petitioned the trial court for post-conviction relief under R.C. 2953.21.  The basis of the petition was ineffective assistance of counsel during trial.  The trial court granted his request for an evidentiary hearing on the issue.  After additional motions and appeals concerning the motion, an evidentiary hearing was finally held on April 9, 2009.  After the hearing, the trial court issued its decision denying Smith's motion for post-conviction relief.  In its entry, the trial court stated that Smith's claim of ineffective assistance of counsel was barred by res judicata.  That decision is the basis of Smith's current appeal.

## II. Assignments of Error

First Assignment of Error

> THE TRIAL COURT ERRED IN FINDING THAT APPELLANT'S PETITION FOR POST-CONVICTION RELIEF WAS BARRED BY RES JUDICATA.

Second Assignment of Error

> THE TRIAL COURT ERRED IN FINDING THAT APPELLANT HAD NOT DEMONSTRATED GROUNDS FOR POST-CONVICTION RELIEF.

## III. First Assignment of Error

{¶9}     In his first assignment of error, Smith argues that the trial court incorrectly determined that his petition for postconviction relief was barred by the doctrine of res judicata.  In his petition, Smith argues that he was denied effective assistance of counsel during trial.  In denying the petition, the trial court reasoned that Smith could have brought a claim of ineffective assistance during his direct appeal and, thus, he was precluded from raising the issue in postconviction proceedings.

{¶10}   "Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment."  *State v. Perry* (1967), 10

Ohio St.2d 175, 226 N.E.2d 104, paragraph 9 of the syllabus. Additionally, res judicata applies to proceedings involving postconviction relief. *State v. Szefcyk* (1996), 77 Ohio St.3d 93, 95. But the application of res judicata in postconviction proceedings is not absolute.

{¶11} The doctrine of res judicata may be overcome in a postconviction proceeding if the petitioner presents competent, relevant, and material evidence outside the record. See, eg., *State v. Lawson* (1995), 103 Ohio App.3d 307, 315, citing *State v. Smith* (1985), 17 Ohio St.3d 98, 101, 477 N.E.2d 1128, fn. 1. "However, the evidence presented outside the record must meet some threshold standard of cogency; otherwise, it would be too easy to defeat the res judicata doctrine by simply attaching as exhibits evidence which is only marginally significant and does not advance the petitioner's claim beyond mere hypothesis and a desire for further discovery." *In re J.B.*, 12th Dist. Nos. CA2005-06-176, CA2005-07-193, CA2005-08-377, 2006-Ohio-2715, at ¶16. "Moreover, claims that could have been raised based on evidence in the record are also barred by res judicata even though the petitioner may have presented some additional evidence outside the record." *State v. Turner*, 10th Dist. No. 04AP-1143, 2006-Ohio-761, citing *State v. Cole* (1982), 2 Ohio St.3d 112, 443 N.E.2d

169, at the syllabus, and *State v. Combs* (1994), 100 Ohio App.3d 90, 97, 652 N.E.2d 205.

{¶12} As previously stated, Smith bases his petition for post-conviction relief on a claim of ineffective assistance of counsel during trial. Smith argues that his trial counsel's representation was deficient because counsel failed to present expert testimony concerning the proximate cause of Biser's death. During the postconviction evidentiary hearing, Smith presented the testimony of Dr. Christofides, an endocrinologist, on that issue. Smith's post-conviction petition relies almost entirely upon Dr. Christofides' testimony during the post-conviction evidentiary hearing of April 9, 2009.

{¶13} During Smith's trial, Dr. William Cox testified that Biser's death ultimately was a result of diabetic ketoacidosis. But he also stated that Biser's death was causally related to Smith's assault. Cox stated that the assault caused injury to the frontal lobes of Biser's brain which affected his cognitive ability and made him apathetic and disinterested. As a result, Biser failed to take insulin for his diabetes and he went into diabetic ketoacidosis. During the post-conviction evidentiary hearing, Dr. Christofides presented an alternate theory regarding the cause of Bryan Biser's death. Dr. Christofides testified that, in her opinion, the head injury

resulting from Smith's assault did not result in Biser's death. Instead, it was Dr. Christofides opinion that Biser's death was simply the result of his long-standing mismanagement of his diabetes.

{¶14} During cross-examination, the State question Dr. Christofides as to the source of the evidence she used in formulating her theory:

{¶15} Q.: "You talked about the type one diabetes which obviously that was something everybody was aware of at the time of trial, correct?"

{¶16} A.: "Correct."

{¶17} Q.: "So, that wasn't new information to defense counsel at the time of trial, correct?"

{¶18} A.: "I don't think so."

{¶19} * * *

{¶20} Q.: "And all the information that we've been talking about as far as the overdoses and things of that nature, that was all available at the time of the trial, correct?"

{¶21} A.: "As far as I can see."

{¶22} Q.: "It was all stuff that's in 2005 records, correct?"

{¶23} A.: "As far as I can see."

{¶24} Q.: "Okay. Now, you say you observed Dr. Cox's testimony. You went through the records on Dr. Cox's testimony, correct. Did you note

that defense counsel addressed the issues of increased blood glucose levels during Dr. Cox's testimony?"

{¶25}   A.:   "Yes."

{¶26}   Q.:   "And the affidavit that you prepared in and the conclusions that you reached and the, when this petition was initially filed, this is based, that was all originally based on information that was provided to you that was available at trial, is that correct?"

{¶27}   A.:   "Correct."

{¶28}   Dr. Christofides' testimony clearly shows that her theory as to the proximate cause of Biser's death was based on evidence which was available at the time of Smith's trial.  As such, a claim of ineffective assistance of counsel based on that evidence should have been raised in Smith's direct appeal.  More importantly, as shown below, Ohio courts have held that the presentation of alternate theories by expert witnesses in postconviction proceedings will not defeat the application of res judicata.

{¶29}   "A postconviction petition does not show ineffective assistance merely because it presents a new expert opinion that is different from the theory used at trial."  *Combs* at 103.  "[T]o the extent that appellant may now wish to expand upon the point, it is settled that a postconviction petition does not demonstrate ineffective assistance of counsel even when it

presents a new expert opinion that is different from the theory used at trial."
*State v. Cornwell*, 7th Dist. No. 00-CA-217, 2002-Ohio-5177, at ¶46.  See, also, *State v. Roseborough*, 5th Dist. Nos. 09 COA 003, 09 COA 004, 2010-Ohio-1832, at ¶17; *State v. Tenace*, 6th Dist. No. L-05-1041, 2006-Ohio-1226, at ¶26; *State v. Turner*, 10th Dist. No. 04AP-1143, 2006-Ohio-761, at ¶35; *State v. White* (Aug. 7, 1998), 5th Dist. No. 97COA01229, at *9.

{¶30}   In *State v. Tenace*, the petitioner for post-conviction relief argued that he had been given ineffective assistance of counsel during trial. In his petition, he included the affidavit of an expert witness who stated that the appellant suffered from low serotonin levels.  The petitioner argued that his trial counsel rendered ineffective assistance because he failed to investigate and present evidence linking the appellant's low levels of serotonin and his violent behavior.  In finding that the petitioner had failed to present evidence to substantiate his postconviction petition, the court stated "this affidavit only proves that there was another possible defense strategy available. The mere existence of an alternative theory of defense, however, is insufficient to establish ineffective assistance of counsel." *Tenace* at ¶26.

{¶31}   The ruling in *Tenance* is analogous to the case sub judice. Here, Dr. Christofides is simply presenting another theory as to the

proximate cause of Bisler's death. Ohio case law clearly shows that alternate or supplementary theories from expert witnesses, which are presented in postconviction proceedings, are not sufficient to establish ineffective assistance of counsel and overcome the application of res judicata. Accordingly, we overrule Smith's first assignment of error.

{¶32} The record clearly shows that the evidence Dr. Christofides relied on was available at the time of trial. Because such information was in the trial record, Smith could have and should have raised issues relating to that evidence at the time of his direct appeal. Additionally, alternate theories presented by an expert witness during postconviction proceedings do not show that the petitioner had ineffective assistance of counsel. As such, we find that Smith's postconviction petition is barred by the doctrine of res judicata. As Smiths' petition is barred by res judicata, his second assignment of error is rendered moot.

**JUDGMENT AFFIRMED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.

Kline, J.: Concurs in Judgment Only.
Harsha, P.J.: Dissents.

For the Court,

BY: _____
Matthew W. McFarland, Judge

**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**