[Cite as *State v. Costell*, 2021-Ohio-4363.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    v.

JON J. COSTELL,

    DEFENDANT-APPELLANT.

CASE NO. 14-21-02

O P I N I O N

Appeal from Union County Common Pleas Court
Trial Court No. 2014-CR-0127

**Judgment Affirmed**

**Date of Decision: December 13, 2021**

APPEARANCES:

    *Addison M. Spriggs* **for Appellant**

    *Samantha Hobbs* **for Appellee**

**WILLAMOWSKI, P.J.**

{¶1} Defendant-appellant Jon J. Costell ("Costell") appeals the judgment of the Union County Court of Common Pleas, arguing that his petition for postconviction relief was not barred by res judicata and that his petition set forth substantive grounds for relief. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} On September 25, 2013, Costell called the police to his residence to report that his wife, Debra L. Costell ("Debra"), was not breathing. Doc. 15. When emergency services arrived at the residence, they pronounced Debra dead at the scene. Doc. 15. April 13, Vol. II Tr. 213. Before her death, Debra had spent a number of years as a paraplegic who was bedridden and under the care of Costell. Doc. 15. Paul L. Slaughter ("Slaughter"), an investigator with the Union County Coroner's Office, visited Costell's residence. April 13, Vol. II Tr. 246. After examining the living area, Slaughter told Costell that he did not, at that time, see a need for an autopsy to be performed on Debra. *Id.*

{¶3} However, several home healthcare workers, who had assisted Costell in caring for Debra, reported that they had seen Costell behave abusively towards Debra. April 13, Vol. II Tr. 250. These reports led Dr. David Applegate, who was the Union County Coroner, to order an autopsy on Debra. *Id.* Slaughter then called Costell to inform him that an autopsy had been ordered for Debra. *Id.* at 250-252.

Slaughter stated that Costell was agitated; talked for thirty to forty minutes; insisted that he had done nothing wrong; and said that there was no need for an autopsy. *Id.* at 252, 254. Debra's autopsy revealed that she died "as a result of an acute intoxication by the combined effects of sertraline (more commonly known as Zoloft) and tramadol." Doc. 15.

{¶4} During the course of their investigation, the police determined that Costell was the only person who had been with Debra in between September 23, 2015 and her death; that Debra was unable to retrieve the medication by herself; that Costell "provided the medication to Debra"; and that Costell "did not mistakenly give the wrong medication." Doc. 15. Costell was subsequently charged with one count of aggravated murder in violation of R.C. 2903.01(A); one count of failing to provide for a functionally impaired person in violation of R.C. 2903.16(A); one count of domestic violence in violation of R.C. 2919.25(B); and one count of involuntary manslaughter in violation of R.C. 2903.04(A). Doc. 1.

{¶5} At trial, the State called several witnesses to testify about Debra's cause of death. Dr. Kenneth Gerston ("Dr. Gerston"), a deputy coroner in Franklin County, testified that he performed Debra's autopsy. April 15 Tr. 16. He testified that Debra had no indication of liver disease or kidney disease. *Id.* at 25-26. Debra's heart was "slightly enlarged," but he confirmed that there were no signs of a heart attack. *Id.* at 30-31. Dr. Gerston noted that Debra's lungs showed signs that she

"had some emphysema." *Id*. at 24. However, he could not determine Debra's cause of death from the anatomical findings in the autopsy. *Id*. at 27-28.

{¶6} Dr. Gerston testified that he then examined the contents of the toxicology report. April 15 Tr. 27-28. He stated that this report indicated that Debra had a "high level of Sertraline" and "a toxic to lethal level of tramadol" in her system. *Id*. at 27-28. Based on these concentrations of drugs in her system, Dr. Gerston then concluded that Debra's cause of death was "acute intoxication by the combined effects of Sertraline and Tramadol." *Id*. at 28. He explained that "acute mean[t] that [her death] * * * would occur within a short time, say hours." *Id*. at 28.

{¶7} On cross-examination, Dr. Gerston stated that he did not receive copies of all of Debra's medical records at the time he conducted the autopsy because this was an out of county death. April 15 Tr. 32. However, he was aware that Debra was a "paraplegic, had diabetes, and was oxygen dependent." *Id*. at 33. The Defense also inquired into whether the level of drugs would be elevated if Debra's body was not metabolizing these substances properly. *Id*. at 36-37. Dr. Gerston replied that there were no indications that Debra's liver or kidneys were not functioning properly or were not capable of metabolizing these substances. *Id*. He further testified that the most "common cause" of these elevated concentrations of Sertraline and Tramadol "would be an overdose." *Id*. at 37.

{¶8} When asked about the level of Tramadol found in Debra's system, Dr. Gerston stated that he was "not sure exactly what the actual—it varies from book to book, but I believe this would be approximately two times the amount that you would expect to find—more than two times." April 15 Tr. 44. He stated that Tramadol level alone could have been lethal but that "[i]t depends on the individual. Some individuals react differently to it, depending on the length of time they're taking the drug." *Id*. at 46. His concluded that these of levels Sertraline and Tramadol caused Debra's death. *Id*. at 28, 43.

{¶9} Dr. Laureen Marinetti ("Dr. Marinetti"), who worked for the Montgomery County Coroner's Office as the chief toxicology in the forensic toxicology laboratory, reviewed the autopsy and toxicology reports for Debra. April 15 Tr. 47-48, 53. She testified that Debra's level of Sertraline "was approximately 11 times higher than the high end of the range." *Id*. at 57. The level of Tramadol was "five times higher than what would be expected." *Id*. at 58-59. Dr. Marinetti stated that these levels of these drugs were not consistent with the prescribed dosages. *Id*. at 61. She also confirmed that the presence of metabolites in Debra's system indicated that her liver was processing these drugs. *Id*. at 62.

{¶10} On cross-examination, Dr. Marinetti stated that she was not informed that Debra had Wernicke-Korsakoff syndrome and that she did not account for this condition in her analysis. April 15 Tr. 63. She also stated that she did not have all of Debra's medical records at the time she was reviewing the toxicology and autopsy

reports. *Id.* The Defense informed Dr. Marinetti that Dr. Gerston had testified that the level of Tramadol was twice as high as what he expected and that the Sertraline was "slightly higher than normal." *Id.* at 44-45, 65. In response, Dr. Marinetti stated that the level of Sertraline was beyond the therapeutic range. *Id.* at 65. She also confirmed that, based on the published ranges that she reviewed, the level of Tramadol in Debra's system was five times "the acceptable limit." *Id.*

{¶11} On redirect examination, she testified that the concentrations of Sertraline and Tramadol in Debra's system were "toxic to lethal" and that the "side effects being produced are going to be serious in nature, both on the brain and the heart." April 15 Tr. 67. She further testified that these concentrations of these drugs "can have a toxic effect on a heart that is already enlarged." *Id.* at 69. She affirmed that these drugs were capable of causing Debra's death. *Id.* After the State rested, the Defense did not call any medical experts.

{¶12} After his trial, the jury found Costell guilty of all four charges. Doc. 110-112. On April 20, 2015, Costell was sentenced on one count of aggravated murder and on one count of domestic violence.[1] Doc. 115. On May 13, 2015, Costell filed his direct appeal with this Court. Doc. 126. In his direct appeal, he "submit[ted] a laundry list of 18 instances that he allege[d] demonstrate[d] that his trial counsel was ineffective during trial." *State v. Costell*, 3d Dist. Union No. 14-

---

[1] The charges of failing to provide for a functionally impaired person and involuntary manslaughter were merged with the charge of aggravated murder at sentencing. Doc. 115.

15-11, 2016-Ohio-3386, ¶ 145. On June 13, 2016, this Court released a decision that affirmed the judgment of the trial court. *Id.*

{¶13} On August 9, 2016, Costell filed a petition for postconviction relief ("petition"). Doc. 136. Attached to this petition were two reports that had been authored by two different doctors. Doc. 136, Ex. A, B. The authors of these reports stated that, in their opinions, Debra's death was not caused by the combined effects of Sertraline and Tramadol but by her other health conditions. Doc. 136, Ex. A, B. On the basis of these opinions, Costell argued that his counsel was ineffective for failing to file a *Daubert* challenge of the State's medical experts; failing to consult with experts; failing to investigate the medical evidence; and failing to present expert testimony. Doc. 136. He asserted that these ineffective assistance of counsel claims constituted substantive grounds for relief. Doc. 136.

{¶14} On January 12, 2021, the trial court reached a determination on this petition. Doc. 154. The trial court found that Costell had not demonstrated that he had been deprived of his right to the effective assistance of counsel and that these claims were barred by res judicata. Doc. 154. Costell filed his notice of appeal on February 5, 2021. Doc. 157. On appeal, he raises the following two assignments of error:

**First Assignment of Error**

**The trial court abused its discretion when it determined that res judicata bars consideration of Jon's postconviction petition.**

**Second Assignment of Error**

**The trial court abused its discretion by finding that no new credible evidence supported Jon's postconviction grounds for relief.**

For the sake of analytical clarity, we will evaluate Costell's second assignment of error before his first assignment of error.

*Second Assignment of Error*

{¶15} Costell argues that the two reports attached to his petition establish that he was denied his right to the effective assistance of counsel and, therefore, set forth substantive grounds for relief.

Legal Standard

{¶16} "R.C. 2953.21 governs petitions for post-conviction relief." *State v. Wine*, 3d Dist. Auglaize No. 2-15-07, 2015-Ohio-4726, ¶ 10. "Postconviction review is not a constitutional right, but is a collateral civil attack on a judgment that is governed solely by R.C. 2953.21." *State v. Keith*, 176 Ohio App.3d 260, 2008-Ohio-741, 891 N.E.2d 1191, ¶ 24 (3d Dist.). "Any person convicted of a criminal offense who claims that there was a denial or infringement on his rights to such a degree as to render the judgment void or voidable may file a petition for post-conviction relief." *State v. Gaddy*, 3d Dist. Allen No. 1-20-41, 2021-Ohio-637, ¶ 6, citing R.C. 2953.21(A)(1)(a)(i).

{¶17} In general, to be timely filed, a petition for postconviction relief must be filed with the trial court "no later than three hundred sixty-five days after the date

on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction * * *." R.C. 2953.21(A)(2)(a).

> **The court shall consider a petition that is timely filed within the period specified in division (A)(2) of this section * * * even if a direct appeal of the judgment is pending. Before granting a hearing on a petition filed under division (A)(1)(a)(i), (ii), (iii), or (iv) of this section, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript. * * ***

R.C. 2953.21(D). Thus, "[a] petitioner is not entitled to an evidentiary hearing simply because he or she filed a petition for post-conviction relief." *State v. Bender*, 3d Dist. Union No. 14-21-01, 2021-Ohio-1931, ¶ 7, citing *State v. Lewis*, 3d Dist. Logan No. 8-19-08, 2019-Ohio-3031, ¶ 11.

{¶18} "A petition for post-conviction relief does not provide a petitioner a second opportunity to litigate his conviction * * *." *State v. Cox*, 5th Dist. Muskingum No. CT2018-0075, 2019-Ohio-521, ¶ 11. Thus, "it is longstanding Ohio law that 'res judicata [is] a proper basis upon which to dismiss without hearing an R.C. 2953.21 petition.'" *State v. Artis*, 3d Dist. Logan No. 8-21-12, 2021-Ohio-2296, ¶ 14, quoting *State v. Cole*, 2 Ohio St.3d 112, 113, 443 N.E.2d 169 (1982).

> **Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process**

> **that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment.**

*State v. Baker*, 3d Dist. Auglaize No. 2-16-07, 2016-Ohio-5669, ¶ 13, quoting *State*

*v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967), paragraph nine of the syllabus.

> **Generally, an issue which was or could have been raised on direct appeal is not appealable in a petition for postconviction relief, because it is barred by res judicata. *State v. Steffen* (1994), 70 Ohio St.3d 399, 410, 639 N.E.2d 67. If an ineffective assistance of counsel issue concerns a matter outside the record, however, the appellate court could not consider it on direct appeal because the court can only consider matters contained in the record. *State v. Smith* (1985), 17 Ohio St.3d 98, 101, fn. 1, 477 N.E.2d 1128. Although ineffective assistance of counsel ordinarily should be raised on direct appeal, therefore, res judicata does not bar a defendant from raising this issue in a petition for postconviction relief if the claim is based on evidence outside the record. This principle applies even when the issue of ineffective assistance of counsel was raised on direct appeal.**

*State v. Jones*, 8th Dist. Cuyahoga No. 83601, 2004-Ohio-3868, ¶ 6. *See State v.*

*Jones*, 3d Dist. Defiance No. 4-07-02, 2007-Ohio-5624, fn. 5.

> **Where ineffective assistance of counsel is alleged in a petition for postconviction relief, the defendant, in order to secure a hearing on his petition, must proffer evidence which, if believed, would establish not only that his trial counsel had substantially violated at least one of a defense attorney's essential duties to his client but also that said violation was prejudicial to the defendant. *State v. Jackson*, [64 Ohio St.2d 107, 413 N.E.2d 819]; *State v. Lytle* (1976), 48 Ohio St.2d 391, 358 N.E.2d 623 [(*vacated in part on other grounds*)]; *see State v. Hester,* [45 Ohio St.2d 71, 341 N.E.2d 304 (1976)]. Generally, the introduction in an R.C. 2953.21 petition of evidence dehors the record of ineffective assistance of counsel is sufficient, if not to mandate a hearing, at least to avoid dismissal on the basis of res judicata.**

*Cole* at 114. *See State v. Hill*, 10th Dist. Franklin No. 21AP-16, 2021-Ohio-3899, ¶ 15 ("To warrant an evidentiary hearing, the petitioner bears the initial burden of providing evidence that demonstrates a cognizable claim of constitutional error.").

**{¶19}** "Under Ohio law, 'a properly licensed attorney is presumed to carry out his duties in a competent manner.'" *State v. Harvey*, 3d Dist. Marion No. 9-19-34, 2020-Ohio-329, ¶ 57, quoting *State v. Gee*, 3d Dist. Putnam No. 12-92-9, 1993 WL 270995 (July 22, 1993). "For this reason, the appellant has the burden of proving that he or she was denied the right to the effective assistance of counsel." *State v. Cartlidge*, 3d Dist. Seneca No. 13-19-44, 2020-Ohio-3615, ¶ 39. "In order to prove an ineffective assistance of counsel claim, the appellant must carry the burden of establishing (1) that his or her counsel's performance was deficient and (2) that this deficient performance prejudiced the defendant." *State v. McWay*, 3d Dist. Allen No. 1-17-14, 2018-Ohio-3618, ¶ 24, quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**{¶20}** In order to establish deficient performance, the appellant must demonstrate that trial "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *State v. Howton*, 3d Dist. Allen No. 1-16-35, 2017-Ohio-4349, ¶ 35, quoting *Strickland* at 687. "[D]ebatable trial tactics do not establish ineffective assistance of counsel." *State v. Queen*, 3d Dist. Logan No. 8-19-41, 2020-Ohio-618, ¶ 14,

quoting *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 101.

**{¶21}** In order to establish prejudice, "the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *State v. Davis*, 3d Dist. Seneca No. 13-16-30, 2017-Ohio-2916, ¶ 36, quoting *State v. Bibbs*, 2016-Ohio-8396, 78 N.E.3d 343, ¶ 13 (3d Dist.). If the appellant does not establish one of these two prongs, the appellate court does not need to consider the facts of the case under the other prong of the test. *State v. Baker*, 3d Dist. Allen No. 1-17-61, 2018-Ohio-3431, ¶ 19, citing *State v. Walker*, 2016-Ohio-3499, 66 N.E.3d 349, ¶ 20 (3d Dist.).

**{¶22}** On appeal, we review a trial court's decision to dispose of a petition for postconviction relief without an evidentiary hearing for an abuse of discretion. *State v. Liles*, 3d Dist. Allen No. 1-16-33, 2017-Ohio-240, ¶ 10, quoting *State v. Jeffers*, 10th Dist. Franklin No. 10AP-1112, 2011-Ohio-3555, ¶ 23. "An abuse of discretion is not merely an error of judgment." *State v. Sullivan*, 2017-Ohio-8937, 102 N.E.3d 86, ¶ 20 (3d Dist.). "Rather, an abuse of discretion is present where the trial court's decision was arbitrary, unreasonable, or capricious." *State v. Kleman*, 3d Dist. Hardin No. 6-19-01, 2019-Ohio-4404, ¶ 18, quoting *Howton*, *supra*, at ¶ 23.

Legal Analysis

**{¶23}** In this case, the transcript for Costell's direct appeal was filed with this Court on August 10, 2015.  Doc. 134.  Tr. 1.  He then filed his petition for postconviction relief on August 9, 2016.  Doc. 136.  Thus, while the trial court did not issue a ruling on his petition until January 12, 2021, Costell did timely file his petition.  Doc. 154, 136.  Based on the contents of his petition, Costell argues, on appeal, that he was denied his right to the ineffective assistance of counsel because his attorney failed to (1) "file a *Daubert* challenge" (2) "consult with experts," (3) "investigate the medical evidence," and (4) "present exculpatory expert testimony." (Italics added.)  Appellant's Brief, 14.  *See* Doc. 136.

**{¶24}** While ineffective assistance of counsel claims are generally to be raised on direct appeal, Costell has attached two reports that were produced after his trial by two alleged medical experts who examined Debra's medical records and autopsy reports.  Doc. 136, Ex. A, B.  *See Jones*, 2004-Ohio-3868, at ¶ 6.  Since these two reports were not in the record, Costell could not have raised arguments based on their contents in his direct appeal.  Thus, res judicata does not bar Costell's timely filed petition for postconviction relief.  *State v. Krzywkowski*, 8th Dist. Cuyahoga Nos. 83599, 83842, and 84056, 2004-Ohio-5966, ¶ 11-15.

**{¶25}** However, this does not mean that Costell has presented "substantive grounds for relief which would warrant a hearing based upon the petition." *Jackson, supra*, at 110.  In its judgment entry, the trial court considered the ineffective

-13-

assistance of counsel claims that Costell raised in his petition and found these arguments to be without merit. Doc. 154. We turn now to considering the four ineffective assistance of counsel claims that Costell raised in his petition.

{¶26} First, Costell argues that his counsel was ineffective for failing to raise a *Daubert* challenge. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593-594, 113 S.Ct. 2786, 2797, 125 L.Ed.2d 469, 482-483 (1993).

> **In determining whether the opinion of an expert is reliable under Evid.R. 702(C), a trial court, acting as a gatekeeper, examines whether the expert's conclusion is based on scientifically valid principles and methods.**

*State v. Wangler*, 3d Dist. Allen No. 1-11-18, 2012-Ohio-4878, ¶ 59. "[I]n assessing reliability, "[t]he focus * * * must [generally] be * * * on principles and methodology, not on the conclusions that they generate." *Daubert*, at 595.

{¶27} In this process, the Ohio Supreme Court has adopted the following factors from the United States Supreme Court's decision in *Daubert*:

> **(1) whether the theory or technique has been tested, (2) whether it has been subjected to peer review, (3) whether there is a known or potential rate of error, and (4) whether the methodology has gained general acceptance.**

*State v. Nemeth*, 82 Ohio St.3d 202, 211, 1998-Ohio-376, 694 N.E.2d 1332, 1338-1339 (1998), citing *Daubert* at 593-594. The Ohio Supreme Court noted that "none of these factors is a determinative prerequisite to admissibility." *Id*. at 1339.

{¶28} In his other three ineffective assistance of counsel claims, Costell argues that defense counsel failed either to procure or introduce evidence at trial

that would be beneficial to the Defense. In contrast, Costell asserts here that defense counsel was ineffective for failing to raise a *Daubert* challenge that sought to exclude the testimony of the State's medical experts. As an initial matter, we note that the "decision to raise a *Daubert* challenge falls within the rubric of trial strategy * * *." *State v. Sands*, 11th Dist. Lake No. 2007-L-003, 2008-Ohio-6981, ¶ 108.

{¶29} Further, the reports do not establish that the methods employed by the State's medical experts would have been found inadmissible under the *Daubert* standard. Doc. 136, Ex. A, B. The reports do not contain information that demonstrates that the State's medical experts used techniques that have not been tested; relied on methods that had not been subject to peer review; or that their methodology was not generally accepted. *See Nemeth, supra*, at 211. These reports provide no information that would substantiate the presence of any of these three factors.

{¶30} As to the known or potential rate of error, the first report alleged that a "[p]ostmortem redistribution [of drugs] can cause erroneous test results." Doc. 136, Ex. A. This report cites a study that suggests "Sertraline *likely* undergoes significant postmortem redistribution." (Emphasis added.) Doc. 136, Ex. A. Similarly, the report stated that Tramadol may have "a propensity for * * * postmortem redistribution." Doc. 136, Ex. A. The author of the second report also bases his conclusions on the postmortem redistribution of drugs and identifies a

paper that found that Sertraline undergoes a postmortem redistribution. Doc. 136, Ex. B. However, the second report states the following about Tramadol:

> **There are no papers that I could find that demonstrate a difference in the antemortem level compared to the postmortem level for Tramadol. Again, that does not mean that it does not occur, only that no one has studied and published it.**
>
> **\* \* \***
>
> **I have not placed a prediction interval on the tramadol level because no data exists for me to calculate it. However, having calculated these types of prediction intervals for other drugs such as fentanyl and amphetamine, I expect if and when data does become available, it will plainly show an overlap of the prediction interval for her tramadol.**

Doc. 136, Ex. B. While Costell has provided some information that arguably relates to the fourth factor, this information is not definitive and is not, in the absence of any evidence that would tend to establish the other three factors, sufficient to demonstrate that a *Daubert* challenge would have been successful.

{¶31} Having reviewed the materials attached to his petition, we conclude that Costell has not identified any grounds upon which a *Daubert* challenge would have been successful. As such, he has not demonstrated that such a challenge would have resulted in the exclusion of any testimony that was provided by the State's medical experts. *See State v. Aboytes*, 11th Dist. Lake No. 2020-L-001, 2020-Ohio-6806, ¶ 168; *State v. Parsley*, 10th Dist. Franklin No. 09AP-612, 2010-Ohio-1689, ¶ 64. Thus, Costell has not established that he was denied his right to the effective assistance of counsel with this argument.

{¶32} Second, Costell asserts that his defense counsel "failed to consult with appropriate experts." Doc. 136. However, "[e]ffectiveness standards do not mandate that counsel consult multiple experts until they find one who supports their conclusion." *State v. Waddy*, 2016-Ohio-4911, 68 N.E.3d 381, ¶ 53 (10th Dist.).

> **In fact, in many criminal cases trial counsel's decision not to seek expert testimony 'is unquestionably tactical because such an expert might uncover evidence that further inculpates the defendant.' *State v. Glover*, [12th Dist.] Clermont App. No. CA2001-12-102, 2002-Ohio-6392, 2002 WL 31647905, at ¶ 95. "Further, even if the wisdom of such an approach is debatable, 'debatable trial tactics' do not constitute ineffective assistance of counsel." *Id*., quoting *State v. Clayton* (1980), 62 Ohio St.2d 45, 49, 16 O.O.3d 35, 402 N.E.2d 1189.**

*State v. Samatar*, 152 Ohio App.3d 311, 2003-Ohio-1639, 787 N.E.2d 691 (10th Dist.), ¶ 90. *See Krzywkowski, supra*, at ¶ 22.

{¶33} We cannot discern from the record whether defense counsel did or did not consult with experts before trial. In his petition, Costell asserts that defense "counsel failed to consult with *appropriate* experts" and that this failure prevented him from procuring evidence that was beneficial to the Defense. (Emphasis added.) Doc. 136. However, defense counsel did not have a duty to consult with experts until he found an opinion that was beneficial to the Defense. *Waddy* at ¶ 53. In this argument, Costell has identified actions that fall squarely within the ambit of debatable trial tactics. He has not established that defense counsel's performance was deficient. Accordingly, this argument is without merit.

{¶34} Third, Costell argues that defense counsel failed to investigate the medical evidence. Doc. 136. "As a general matter, trial 'counsel has a duty to make reasonable investigations * * *.'" *State v. Berry*, 3d Dist. Union No. 14-20-05, 2021-Ohio-1132, ¶ 127, quoting *State v. Bradley*, 42 Ohio St.3d 136, 146, 538 N.E.2d 373, 383 (1989). However, the "argument that further investigation would have necessarily led to * * * retaining an expert witness is * * * vague and speculative * * *." *State v. Salyers*, 3d Dist. Allen No. 1-20-55, 2021-Ohio-2978, ¶ 39.

{¶35} In this case, neither the record nor the reports attached to Costell's petition reveal any information about the scope or scrupulousness of defense counsel's investigation into the medical evidence presented at trial. The fact that defense counsel did not consult with the authors of the reports attached to Costell's petition does not mean that defense counsel did not thoroughly and adequately investigate the medical evidence that formed the basis of this case. "We 'cannot infer a defense failure to investigate from a silent record.'" *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 65, quoting *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶ 244.

{¶36} Further, as a part of this argument in his petition, Costell argued that his defense counsel was ineffective for failing to call expert witnesses at trial. Doc. 136. However, "the failure to call an expert and instead rely on cross-examination does not constitute ineffective assistance of counsel." *State v. Nicholas*, 66 Ohio

St.3d 431, 437, 613 N.E.2d 225, 230 (1993). The trial court found that defense "counsel did effectively question each of the witnesses presented by the State regarding Debra's levels of Sertraline and Tramadol." Doc. 154. A review of the record confirms that defense counsel vigorously cross-examined the State's medical experts regarding Debra's cause of death. April 15 Tr. 32-39, 44-46, 64-66, 142-145. *See* April 14 Vol. II Tr. 302-305. Thus, Costell has again identified a decision that falls within the rubric of debatable trial tactics. Since this argument does not establish deficient performance, it is without merit.

{¶37} Fourth, Costell argues that defense counsel "fail[ed] to present exculpatory expert testimony" at trial. Appellant's Brief, 14. Specifically, Costell asserts that defense counsel failed to present the opinions contained in the reports attached to his petition at trial. Doc. 136. However, in arguing that defense counsel failed to present these opinions at trial, Costell is, in substance, only reasserting his previous two arguments: (1) that defense counsel failed to consult with potential medical experts until he found the two authors of these reports and (2) that defense counsel then failed to call these two authors to offer their opinions at trial. Thus, we have already determined that the substance of this fourth ineffective assistance of counsel claim addresses decisions that fall within the ambit of trial strategy and do not establish deficient performance. *See Waddy, supra,* at ¶ 53; *Salyers, supra*, at ¶ 39; *Were, supra*, at ¶ 244; *Nichols, supra*, at 437.

{¶38} Further, "Ohio case law clearly shows that alternate or supplementary theories from expert witnesses, which are presented in postconviction proceedings, are not sufficient to establish ineffective assistance of counsel * * *." *State v. Smith*, 4th Dist. Ross No. 09CA3128, 2011-Ohio-664, ¶ 31. *See State v. Combs*, 100 Ohio App.3d 90, 103, 652 N.E.2d 205 (1st Dist. 1994); *State v. Cornwell*, 7th Dist. Mahoning No. 00-CA-217, 2002-Ohio-5177, ¶ 46; *State v. Spaulding*, 2018-Ohio-3663, 119 N.E.3d 859, ¶ 81 (9th Dist.); *State v. Campbell*, 10th Dist. Franklin No. 03AP-147, 2003-Ohio-6305, ¶ 39.

{¶39} The reports attached to Costell's petition contain opinions about evidence that was available or presented at trial. Ex. 136, Ex. A, B. Further, defense used his cross-examination of the State's medical experts to suggest that they had not appropriately accounted for Debra's medical history in their analyses and that Debra's death was attributable to her other medical conditions. The opinions of the authors of the two reports tracked with defense counsel's theory of this case as their opinions were also that Debra's death was caused by her other health conditions. These opinions would have only supplemented defense counsel's theory of this case and are, for this reason, insufficient to establish deficient performance.

{¶40} In conclusion, the trial court determined that the ineffective assistance of counsel claims raised by Costell were without merit. Having examined each of Costell's arguments in light of the information contained in the reports attached to his petition, we also conclude that Costell has not carried the burden of

-20-

demonstrating that any of these alleged ineffective assistance of counsel claims. Thus, the trial court did not abuse its discretion in disposing of his petition without an evidentiary hearing. Costell's second assignment of error is overruled.

*First Assignment of Error*

{¶41} Costell argues that the trial court erred in stating that res judicata was applicable to his petition for postconviction relief.

Legal Standard

{¶42} Crim.R. 52(A) defines a harmless error as "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Crim.R. 52(A). "In most cases, in order to be viewed as 'affecting substantial rights,' 'the error must have been prejudicial.'" *State v. Harris*, 142 Ohio St.3d 211, 2015-Ohio-166, 28 N.E.3d 1256, ¶ 36, quoting *State v. Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222, ¶ 7. "Harmless error does not affect the outcome of the case and, thus, does not warrant a judgment to be overturned or set aside." *State v. Wilson*, 3d Dist. Allen, No. 1-09-53, 2010-Ohio-2947, ¶ 26, citing *State v. Brown*, 100 Ohio St.3d 51, 2003-Ohio-5059, 796 N.E.2d 506, ¶ 7.

Legal Analysis

{¶43} Under the first assignment of error, we concluded that res judicata did not bar consideration of the issues raised in Costell's petition. While the trial court stated that res judicata was applicable to Costell's petition, the trial court, in fact, considered the merits of Costell's ineffective assistance of counsel claims and found

his arguments to be without merit. Doc. 154. In this appeal, we reviewed the trial court's analysis and conducted our own review of Costell's ineffective assistance of counsel claims. We found the arguments that Costell raised in his petition to be without merit. Thus, he cannot demonstrate that he was prejudiced by the trial court stating, in its judgment entry, that res judicata was applicable to his petition. Any error the trial court may have committed in making this statement is, therefore, harmless error. As such, Costell's first assignment of error is overruled.

*Conclusion*

{¶44} Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Union County Court of Common Pleas is affirmed.

***Judgment Affirmed***

**ZIMMERMAN and SHAW, J.J., concur.**

**/hls**