[Cite as *State v. Hooper*, 2025-Ohio-1594.]

# IN THE COURT OF APPEALS OF OHIO
# THIRD APPELLATE DISTRICT
# ALLEN COUNTY

STATE OF OHIO,                                           CASE NO. 1-24-44

    PLAINTIFF-APPELLEE,

  V.

                                          **OPINION AND**

CHEYENNE HOOPER,                                        **JUDGMENT ENTRY**

    DEFENDANT-APPELLANT.

---

**Appeal from Allen County Common Pleas Court**
**Trial Court No. CR 2019 0491**

**Judgment Affirmed**

**Date of Decision:  May 5, 2025**

---

**APPEARANCES:**

    *Felice Harris* **for Appellant**

    *John R. Willamowski Jr.* **for Appellee**

Case No. 1-24-44

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, Cheyenne Hooper ("Hooper"), appeals the May 31, 2024 judgment entry of the Allen County Court of Common Pleas denying her amended petition for post-conviction relief. For the reasons set forth below, we affirm.

{¶2} This case originates from head injuries sustained by Hooper's seven-month-old daughter, L.S., on March 13, 2019.

{¶3} On December 12, 2019, the Allen County Grand Jury indicted Hooper on Count One of felonious assault in violation of R.C. 2903.11(A)(1), (D)(1)(a), a second-degree felony, and Count Two of endangering children in violation of R.C. 2919.22(B)(1), (E)(2)(d), a second-degree felony. Hooper filed a written plea of not guilty to the counts alleged in the indictment on December 20, 2019.

{¶4} The case proceeded to jury trial on May 24-28, 2021. On May 28, 2021, the jury found Hooper guilty of Count Two but not guilty of Count One. Thereafter, on July 22, 2021, the trial court sentenced Hooper to eight years in prison.

{¶5} On August 18, 2021, Hooper appealed the trial court's judgment entry of sentence.[1] *State v. Hooper,* 2022-Ohio-2990, ¶ 10 (3d Dist.). In that direct appeal, we affirmed the judgment of the trial court. *Hooper* at ¶ 59.

---

[1] In Hooper's direct appeal, this court recited much of the factual and procedural background of this case, and we will not duplicate those efforts here.

**{¶6}** On October 16, 2023, Hooper filed a first amended petition for post-conviction relief (hereinafter "amended petition") asserting that she received ineffective assistance of counsel at trial.[2] Specifically, Hooper argued that her trial counsel's performance was deficient for failing to obtain L.S.'s "well-baby records" from birth to nine months. (Doc. No. 184). Hooper further argued that trial counsel was ineffective for failing to "establish that L.S. suffered from craniocephalic disproportion and benign enlargement of the subarachnoid spaces ["BESS"], and argue that those conditions contributed to her injuries." (Doc. No. 197). In support of her ineffective-assistance claim, Hooper proffered evidence outside the record positing that L.S. suffered from preexisting conditions that "made her more susceptible to greater injury from minor trauma." (*Id.*).

**{¶7}** On May 31, 2024, the trial court denied Hooper's amended petition, finding that "the record on its face demonstrates that [Hooper] is not entitled to relief." (Doc. No. 201).

**{¶8}** On June 27, 2024, Hooper filed a notice of appeal, raising a single assignment of error for our review.

### Assignment of Error

**The Trial Court Abused Its Discretion In Denying Cheyenne Hooper's First Amended Petition For Post-Conviction Relief Without A Hearing.**

---

[2] Hooper's initial petition for post-conviction relief was timely filed on December 16, 2022.

{¶9} In her sole assignment of error, Hooper argues that her amended petition sets forth substantive grounds for relief regarding her ineffective-assistance claim and that the trial court abused its discretion by denying the amended petition without a hearing. Hooper contends that the trial court applied the wrong standard by requiring her to "demonstrate[] *actual* ineffectiveness resulting in *actual* prejudice." (Emphasis in original.) (Appellant's Brief at 12). Hooper requests that we reverse the trial court's judgment and remand the case for a hearing pursuant to R.C. 2953.22.

*Standard of Review*

{¶10} "We review a decision to grant or deny a petition for postconviction relief, including the decision whether to afford the petitioner a hearing, under an abuse-of-discretion standard." *State v. Hatton*, 2022-Ohio-3991, ¶ 38. An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

*Analysis*

{¶11} Petitions for post-conviction relief are governed by R.C. 2953.21. *State v. Costell*, 2021-Ohio-4363, ¶ 16 (3d Dist.). "Any person convicted of a criminal offense who claims that there was a denial or infringement on his rights to such a degree as to render the judgment void or voidable may file a petition for post-conviction relief." *State v. Gaddy*, 2021-Ohio-637, ¶ 6 (3d Dist.), citing R.C. 2953.21(A)(1)(a)(i).

-4-

**{¶12}** In order to grant a hearing on a timely petition for post-conviction relief, the trial court must "'determine whether there are substantive grounds for relief.'" *State v. Bunch*, 2022-Ohio-4723, ¶ 23, quoting R.C. 2953.21(D). In relevant part, R.C. 2953.21(D) provides:

> Before granting a hearing on a petition [for post-conviction relief], the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript. . . . If the court dismisses the petition, it shall make and file findings of fact and conclusions of law with respect to such dismissal.

Thus, "[a] petitioner is not entitled to an evidentiary hearing simply because he or she filed a petition for post-conviction relief." *State v. Bender*, 2021-Ohio-1931, ¶ 7 (3d Dist.).

**{¶13}** Moreover, a petition for post-conviction relief does not provide a petitioner a second opportunity to litigate his or her conviction. *Costell* at ¶ 18. Under the doctrine of res judicata,

> "a final judgment of conviction bars the convicted defendant from raising and litigating in any proceeding, except an appeal from that judgment, any [claim] that was raised or could have been raised by the defendant at the trial which resulted in that judgment of conviction or on an appeal from that judgment."

*State v. Blanton*, 2022-Ohio-3985, ¶ 25, quoting *State v. Perry*, 10 Ohio St.2d 175, 180 (1967). However, when a petition for post-conviction relief presents a claim of

ineffective assistance of counsel and relies on evidence outside the record that could not have been adjudicated in a direct appeal, the ineffective-assistance claim is not barred by res judicata. *Blanton* at ¶ 38. *See also State v. Cole*, 2 Ohio St.3d 112, 114 (1982) ("Generally, the introduction in an R.C. 2953.21 petition of evidence *dehors* the record of ineffective assistance of counsel is sufficient, if not to mandate a hearing, at least to avoid dismissal on the basis of *res judicata*.") (Emphasis in original.).

{¶14} To merit a hearing on an ineffective-assistance claim, the petition for post-conviction relief "need not *definitively* establish counsel's deficiency or whether [the petitioner] was prejudiced by it." (Emphasis added.) *Bunch* at ¶ 27. "Instead, the petition must be sufficient on its face to raise an issue whether [the petitioner] was deprived of the effective assistance of counsel, and [the petitioner's] claim depends on factual allegations that cannot be determined by examining the record from [the petitioner's] trial." *Id. See also Cole* at 114 (holding that, to secure a hearing on an ineffective-assistance claim, a petitioner must proffer evidence outside the record that, if believed, would show that counsel was ineffective).

{¶15} In this case, the trial court denied Hooper's amended petition without a hearing. In reaching its decision, the trial court considered Hooper's amended petition and the proffered evidence outside the record. In particular, the trial court considered the report and affidavit of Dr. Stephen Guertin wherein he opined that

L.S.'s head injuries could be related to her "clear predisposition to hemorrhage easily" and not the result of child abuse.   (Doc. No. 186, Ex. C).

{¶16} Dr. Guertin based his opinion on a review of L.S.'s medical records, including the well-baby records from birth to nine months.  In his affidavit, Dr. Guertin averred that "since birth the child's head was expanding at a rate faster than what is normal."  (Doc. No. 186, Ex. B).  In his report, Dr. Guertin explained that "[c]auses for this typically are enlargement of one or more of the spaces between the brain and the dense covering of the brain called the dura."  (Doc. No. 186, Ex. C).  Dr. Guertin hypothesized as follows:

> This could be from excessive spinal fluid (benign enlargement of the subarachnoid spaces ["BESS"]).  It can also be from the presence of unexpected fluid from either a spinal fluid leak (subdural hygroma) or a growing chronic subdural hematoma; in either of those cases secondary to the shearing forces that occur naturally during vaginal birth.

(*Id.*).  Dr. Guertin further averred that "there is no question in my mind that the chronic subdural hemorrhages seen on imaging could be or were birth related." (Doc. No. 186, Ex. B).  In explaining how L.S.'s preexisting medical conditions contributed to the head injuries she sustained on March 13 2019, Dr. Guertin theorized that "it is entirely possible, given the craniocephalic disproportion (birth related chronic subdural hematoma) that [L.S.] developed from birth through 7 mos of age, that because of her craniocephalic disproportion, the fall not only caused

fresh bleeding, but also caused the extensive retinal hemorrhages." (Doc. No. 186, Ex. C).

**{¶17}** In conjunction with considering Dr. Guertin's report and affidavit, the trial court also considered the evidence presented a trial. The trial court noted that the trial centered on whether Hooper knowingly caused the injuries to L.S. by inflicting harm on her, or whether L.S.'s injuries occurred as the result of an accidental fall. The trial court considered the testimony of Dr. Catherine Huber. Dr. Huber testified as an expert in the area of child abuse diagnosis and treatment. Dr. Huber evaluated L.S. at Nationwide Children's Hospital and testified to the medical team's diagnosis of L.S. as having suffered from abusive head trauma and inflicted injury. The trial court noted that Hooper's trial counsel cross-examined Dr. Huber about L.S.'s head circumference being in the 95th percentile.

**{¶18}** The trial court also considered the testimony of Dr. Randall Schlievert. Dr. Schlievert testified as an expert in child abuse diagnosis and treatment. Dr. Schlievert prepared a report about his findings in this case. Dr. Schlievert's report considered possible causes of L.S.'s head injuries—including birth trauma, bleeding disorders, accidental fall, and abusive head trauma. Based on his report, Dr. Schlievert testified that, in his expert opinion, L.S.'s injuries were the result of non-accidental, abusive head trauma.

**{¶19}** Additionally, the trial court considered the testimony of Dr. Daniel Adler, the defense expert. Dr. Adler testified as an expert in pediatric head injuries.

The trial court quoted this court's synopsis of Dr. Adler's testimony, in relevant part, as follows:

> Significantly, Dr. Adler testified that L.S.'s pre-existing medical conditions could have contributed to her injuries—that is, Dr. Adler testified that L.S. is "an abnormal child with numerous anatomical abnormalities that exaggerated her risk of being injured" and that "accidental trauma" "could result in all the problems that are defined by the medical records." (May 24-28, 2021 Tr., Vol. IV, at 799). In other words, Dr. Adler concluded that L.S.'s injuries could have been the result "of an amount of force that's inconsequential." (*Id.* at 794). Specifically, Dr. Adler testified that L.S.'s medical records reflect that she sustained a head injury "at some other point in the past . . . that created this fluid"—"blood of multiple ages"—"in the skull before March 13, 2019." (*Id.* at 777, 785). According to Dr. Adler, this prior-head injury "would be a factor in increasing the risk that the injury described, meaning the fall from the bed, would have been more likely to cause bleeding . . ." (*Id.* at 778). Dr. Adler further testified that L.S. "has an exaggerated risk of abnormal head movement in response to an applied force" because of her pre-existing medical conditions. (*Id.* at 788). He also testified that, based on L.S.'s pre-existing medical conditions, "those forces were sufficient in this case to cause the retinal hemorrhages that are present." (*Id.* at 793).

*Hooper*, 2022-Ohio-2990, at ¶ 33 (3d Dist.). Importantly, the trial court noted that—even though Dr. Adler "did not testify about BESS and its relationship to subdural hematomas and/or retinal hemorrhages" as opined by Dr. Guertin—Dr. Adler testified that L.S.'s preexisting conditions could have contributed to her injuries. (Doc. No. 201).

{¶20} After considering the record in its entirety, the trial court determined that Hooper's amended petition failed to present substantive grounds for relief under R.C. 2953.21. In particular, the trial court found that Hooper's trial counsel acted

reasonably in engaging the services of a board certified pediatric neurologist with extensive experience in diagnosing and treating head injuries. The trial court stated as follows:

> Trial counsel acted more than reasonably in relying on the expertise of a qualified expert in the relevant field to guide them through L.S.'s injuries and to provide a plausible explanation as to the cause of her injuries that did not involve the defendant being the one to cause those injuries. The fact that current counsel for the defendant has now found another expert who has opined on another pre-existing condition of L.S. to explain her injuries in a manner consistent with an accidental fall from the bed does not render prior counsel ineffective.

(Doc. No. 201). Accordingly, the trial court denied Hooper's amended petition without a hearing.

**{¶21}** On appeal, Hooper argues that the trial court abused its discretion by denying her amended petition without a hearing because the amended petition "raises issues about whether she was deprived of effective assistance." (Appellant's Brief at 14). Specifically, Hooper argues that her amended petition "raises a credible question about" trial counsel's failure to obtain L.S.'s medical records, and whether those records disclose preexisting medical conditions that rendered L.S. susceptible to injury. (Appellant's Reply Brief at 8). We disagree.

**{¶22}** As previously stated, in order to grant a hearing on a timely petition for post-conviction relief, the trial court must "'determine whether there are substantive grounds for relief.'" *Bunch*, 2022-Ohio-4723, at ¶ 23, quoting R.C. 2953.21(D).

-10-

> In determining whether the petition states a substantive ground for relief, the trial court must consider the entirety of the record from the trial proceedings as well as any evidence filed by the parties in postconviction proceedings. R.C. 2953.21(D). *If the record on its face demonstrates that the petitioner is not entitled to relief, then the trial court must dismiss the petition.* R.C. 2953.21(D) and (E).

(Emphasis added.) *Bunch* at ¶ 24. Further, "'Ohio case law clearly shows that alternate or supplementary theories from expert witnesses, which are presented in postconviction proceedings, are not sufficient to establish ineffective assistance of counsel[.]'" *Costell*, 2021-Ohio-4363, at ¶ 38 (3d Dist.) (citing cases), quoting *State v. Smith*, 2011-Ohio-664, ¶ 31 (4th Dist.).

**{¶23}** Here, the trial court properly considered the entirety of the record and determined that Hooper failed to present substantive grounds for relief. Moreover, the opinions espoused by Dr. Guertin in his report and affidavit are similar to the opinions testified to by Dr. Adler at trial. Specifically, Dr. Adler testified that L.S.'s preexisting conditions—including "chronic subdural hematomas"—could have contributed to her injuries. (May 24-28, 2021 Tr., Vol. IV, at 775). Dr. Adler further testified that, as to retinal hemorrhaging, L.S.'s preexisting condition of chronic subdural hematomas "exaggerates the risk of more bleeding." (*Id.* at 845).

**{¶24}** Since Hooper's proffered evidence tracks with Dr. Adler's testimony and trial counsel's theory of the case—that L.S.'s preexisting conditions contributed to her injuries caused by an accidental fall—the proffered evidence does not establish substantive grounds for relief. *Costell* at ¶ 39 (concluding that the trial

court did not abuse its discretion by disposing of a petition for post-conviction relief without a hearing when the proffered opinions only supplemented defense counsel's theory of the case).

{¶25} Based on the foregoing, we conclude that the trial court did not abuse its discretion by dismissing Hooper's amended petition without a hearing. The trial court properly considered the entirety of the record and determined that Hooper failed to present substantive grounds for relief.

{¶26} Hooper's assignment of error is overruled.

{¶27} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**MILLER and EPLEY, J.J., concur.**

Case No. 1-24-44

# <u>JUDGMENT ENTRY</u>

For the reasons stated in the opinion of this Court, the assignment of error is overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. See App.R. 30.

William R. Zimmerman, Judge

Mark C. Miller, Judge

Christopher B. Epley, Judge

DATED:
/hls

**\*\* Judge Christopher B. Epley of the Second District Court of Appeals, sitting by Assignment of the Chief Justice of the Supreme Court of Ohio.**

-13-